FINAL COPY
309 Ga. 630

S20A0895.  BROOKS v. THE STATE.

BOGGS, Justice.

Deontae Tremayne Brooks was convicted of malice murder, aggravated assault, and possession of a firearm by a convicted felon under OCGA § 16-11-133 (b) in connection with the shooting death of Branden "Big B" Tinch and the aggravated assault of Lenard Gay. He was sentenced to life without the possibility of parole. He appeals, asserting three enumerations of error: insufficiency of the evidence to support his conviction under OCGA § 16-11-133 (b), ineffective assistance of counsel, and trial court error in failing to grant his motion for mistrial. For the reasons stated below, we reverse Brooks' conviction under OCGA § 16-11-133 (b), affirm his convictions for malice murder and the aggravated assault of Gay, and remand the case to the trial court with direction to enter a judgment of conviction and sentence on the guilty verdicts for possession of a firearm during the commission of a felony and

possession of a firearm by a convicted felon under OCGA § 16-11-131, which the trial court originally merged into the conviction under OCGA § 16-11-133 (b).[1]

1. Construed in the light most favorable to the jury's verdicts, the evidence presented at Brooks' trial showed that on July 22, 2015, Tinch, who was a drug dealer, lived with his father and stepmother in a subdivision in College Park. Tinch and his friend Gay were

[1] The crimes occurred on July 22, 2015. On November 24, 2015, a Fulton County grand jury indicted Brooks for malice murder, three counts of felony murder, two counts of aggravated assault against Brooks and Gay, possession of a firearm during the commission of a felony, possession of a firearm by a convicted felon under OCGA § 16-11-131, and possession of a firearm during commission of a crime against a person by a felon previously convicted of a crime involving a firearm under OCGA § 16-11-133 (b). After several delays and substitutions of trial counsel, Brooks was tried before a jury from May 7 to 14, 2018, and found guilty on all counts. On May 15, 2018, Brooks was sentenced to serve life in prison without the possibility of parole, plus ten years in prison to be served concurrently on the conviction for aggravated assault involving Gay, and five years in prison to be served concurrently on the conviction under OCGA § 16-11-133 (b), although that Code section mandates a fifteen-year consecutive sentence. The trial court merged the other aggravated assault count into the malice murder conviction and merged the remaining firearms counts into the conviction under OCGA § 16-11-133 (b); the felony murder charges were vacated by operation of law. On May 29, 2018, Brooks' trial counsel filed a motion for new trial, which was amended by appellate counsel on September 5, 2019. After a hearing on November 12, 2019, the motion was denied on December 2, 2019. Brooks' notice of appeal was filed on December 20, 2019, and the case was docketed in this Court for the April 2020 term and submitted for decision on the briefs.

riding around the area in Tinch's car, a Toyota Camry, with Gay driving. Tinch received several calls from someone known as "Black Boy," who said he was looking for a ride to cash a check and gave Tinch the address of a nearby house.[2] Gay did not really know "Black Boy" but recalled seeing him around the neighborhood. Tinch and Gay drove to the address, and Brooks walked out of the house, got into the rear passenger seat, and, without saying anything, pulled out a revolver. As Gay grabbed a gun from under the dashboard and rolled out of the car, he heard a gunshot and saw Tinch trying to crawl over toward the driver's door, so he fired a shot at Brooks. Tinch, wounded and bleeding, managed to crawl out of the car with Gay's help, and several witnesses in the neighborhood saw Brooks shooting at Tinch and Gay as they fled. Brooks then ran from the scene, and Tinch and Gay sought assistance from a neighbor, who drove Tinch to his parents' house nearby. Police and EMTs arrived, and Tinch was taken to the hospital, where he was pronounced dead.

---

[2] A cell phone forensic expert testified that Brooks' cell phone made six calls to Tinch that morning.

The medical examiner testified that Tinch was shot twice from behind, in the head and in the lower body, and that the cause of death was a gunshot wound to the head. Gay identified Brooks from a photo lineup, and Brooks was arrested in Ohio approximately one month later.

(a) Brooks argues that the evidence was insufficient to support his conviction on Count 9, possession of a firearm by a convicted felon during the commission of another felony enumerated under OCGA § 16-11-133 (b). Both the District Attorney and the Attorney General concede that the evidence adduced at trial was insufficient, and we agree.

As part of the proof of a violation of OCGA § 16-11-133 (b), the State must present evidence that the defendant possessed a firearm in the commission of certain crimes after having been convicted of one of nine enumerated felonies or "any felony involving the use or possession of a firearm." OCGA § 16-11-133 (b).[3] Count 9 of the

---

[3] OCGA § 16-11-133 (b) provides:
    Any person who has previously been convicted of or who has

indictment charged Brooks with possessing a handgun during the commission of a felony against the person of another, see OCGA § 16-11-133 (b) (1), "said accused having been previously convicted of a felony involving the possession or use of a firearm on indictment number 06SC51346 in the Superior Court of Fulton County, on October 1, 2007."

At Brooks' trial, the State tendered an exhibit consisting of the

---

previously entered a guilty plea to the offense of murder, murder in the second degree, armed robbery, home invasion in any degree, kidnapping, rape, aggravated child molestation, aggravated sodomy, aggravated sexual battery, or any felony involving the use or possession of a firearm and who shall have on or within arm's reach of his or her person a firearm during the commission of, or the attempt to commit:

      (1) Any crime against or involving the person of another;
      (2) The unlawful entry into a building or vehicle;
      (3) A theft from a building or theft of a vehicle;
      (4) Any crime involving the possession, manufacture, delivery, distribution, dispensing, administering, selling, or possession with intent to distribute any controlled substance as provided in Code Section 16-13-30; or
      (5) Any crime involving the trafficking of cocaine, marijuana, or illegal drugs as provided in Code Section 16-13-31,

and which crime is a felony, commits a felony and, upon conviction thereof, shall be punished by confinement for a period of 15 years, such sentence to run consecutively to any other sentence which the person has received.

indictment, plea, charge disposition report, and judgment of conviction and sentence in Brooks' 2007 conviction, showing that while Brooks was originally charged with armed robbery, hijacking a motor vehicle, aggravated assault with intent to rob, and possession of a firearm during the commission of a felony, he entered a guilty plea and was sentenced only for the lesser included offense of theft by taking, aggravated assault with intent to rob, and possession of a firearm in the commission of a felony; the charge of hijacking a motor vehicle was dead-docketed. The trial court excluded the exhibit as unduly prejudicial.[4] Instead, a stipulation was read to the jury as part of the trial court's charge:

> The parties have entered into a stipulation that has been approved by the court about the following facts: this defendant was convicted . . . of aggravated assault with intent to rob on October 1, 2007.

The stipulation does not state that the aggravated assault involved

---

[4] See *Old Chief v. United States*, 519 U. S. 172, 174 (117 SCt 644, 136 LE2d 574) (1997) (excluding full record of prior felony conviction when "the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations").

the use of a firearm, and the title of the crime — aggravated assault with intent to rob — does not suggest the use of a firearm. See OCGA §§ 16-5-20, 16-5-21.[5] Indeed, aggravated assault with intent to rob may be committed without the use of a firearm. See, e.g., *Mathis v. State*, 328 Ga. App. 292, 293 (1) (761 SE2d 836) (2014) (defendant attacked victim with hands, feet, a battery charger, and gasoline, and then took victim's wallet). Moreover, here the State presented

---

[5] The simple assault statute, OCGA § 16-5-20, provides:

> (a) A person commits the offense of simple assault when he or she either:
>> (1) Attempts to commit a violent injury to the person of another; or
>> (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury.

The aggravated assault statute, OCGA § 16-5-21, provides:

> (a) A person commits the offense of aggravated assault when he or she assaults:
>> (1) With intent to murder, to rape, or to rob;
>> (2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury;
>> (3) With any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in strangulation; or
>> (4) A person or persons without legal justification by discharging a firearm from within a motor vehicle toward a person or persons.

no witnesses from the 2007 case. The evidence presented at trial therefore was insufficient to authorize the jury to convict Brooks under OCGA § 16-11-133 (b). See *Tiller v. State*, 286 Ga. App. 230, 232 (648 SE2d 738) (2007) (reversing conviction for possession of firearm by convicted felon when prior conviction could have been for felony or for misdemeanor and evidence at trial did not specify). Cf. *McKie v. State*, 306 Ga. 111, 114 (829 SE2d 376) (2019) (distinguishing *Tiller*).

Accordingly, we reverse the conviction on Count 9 and remand to the trial court to enter convictions and sentences on the two firearm possession counts that were merged with Count 9 for sentencing. See *Blackmon v. State*, 300 Ga. 35, 36-37 (2) (793 SE2d 69) (2016); *Chester v. State*, 284 Ga. 162, 162 (1) (664 SE2d 220) (2008).

(b) Brooks has not challenged the sufficiency of the evidence to support his remaining convictions. However, as is this Court's practice in murder cases, we have reviewed the record to determine the legal sufficiency of the evidence supporting his convictions for

malice murder and aggravated assault.[6] And, in light of the remand, we also have reviewed the record to determine the sufficiency of the evidence supporting the charges of possession of a firearm by a convicted felon and possession of a firearm during the commission of a felony. We conclude that the evidence presented at trial and summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Brooks was guilty of these other crimes. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Brooks contends that his trial counsel was constitutionally ineffective in his choice of a theory of defense. Relying on *Swanson v. State*, 306 Ga. 153, 156 (2) (829 SE2d 312) (2019), Brooks asserts that his trial counsel was ineffective in pursuing a defense of justification by self-defense,[7] contending it was a legally

---

[6] We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, ___ Ga. ___ (___ SE2d ___) (2020). The Court began assigning cases to the December Term on August 3, 2020.

[7] "A person is justified in threatening or using force against another

unsupportable theory, and that trial counsel instead should have asserted the "viable" defense of justification by defense of habitation.[8] We conclude that Brooks has failed to show ineffective assistance.

To prevail on his claim of ineffective assistance, Brooks must prove both that the performance of his lawyer was professionally deficient and that he was prejudiced by this deficient performance. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove deficient performance, Brooks must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). This requires a defendant to "overcome the strong presumption that counsel's performance fell within a

when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force[.]" OCGA § 16-3-21 (a).

[8] "A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to prevent or terminate such other's unlawful entry into or attack upon a habitation[.]" OCGA § 16-3-23. The definition of "habitation" includes a motor vehicle. See OCGA § 16-3-24.1.

wide range of reasonable professional conduct." (Citation and punctuation omitted.) *Marshall v. State*, 297 Ga. 445, 448 (2) (774 SE2d 675) (2015). And to prove prejudice, Brooks "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). If there is no showing of deficient performance, we need not address the prejudice prong. See *Romer*, 293 Ga. at 344 (3) (citing *Strickland*, 466 U. S. at 697 (IV)).

Brooks contends that trial counsel was constitutionally deficient in choosing to assert justification by self-defense instead of by defense of habitation. He contends that self-defense was foreclosed because, Brooks asserts for the first time on appeal, he was engaged in a felony, criminal attempt to purchase marijuana, at the time of the fatal shooting. See OCGA §§ 16-3-21 (b) (2); 16-13-30 (j). He contends that trial counsel instead should have relied upon defense of habitation. Brooks points to *Swanson*, 306 Ga. at 156 (2),

in which appellant's trial counsel asserted self-defense but not defense of habitation. There, Swanson testified at trial that he shot the victim in self-defense, but also admitted that he was engaged in the sale of marijuana, a felony, when the victim attempted to rob him and the passengers in his car. This Court held that, because self-defense was foreclosed by OCGA § 16-3-21 (b) (2) and Swanson's trial testimony, his trial counsel was deficient in requesting a jury instruction on self-defense but not an instruction on defense of habitation, which does not contain an exception for the commission of a felony. See id. at 157-158 (2) (a); OCGA § 16-3-23.

But the circumstances here are quite different from those in *Swanson*. Unlike Swanson, Brooks did not testify and did not admit that he was committing a felony at the time of the incident. During closing argument, Brooks' trial counsel argued that the State had failed to prove the circumstances of the shooting and had failed to exclude the possibility that Brooks acted in self-defense. Trial counsel suggested multiple theories of how the incident occurred, including a possible "drug deal gone wrong," the presence of a fourth

man who shot at the victims,[9] or an attempted robbery by Tinch and Gay.

Brooks contends that trial counsel's speculation in closing argument amounted to an admission that Brooks was guilty of a felony — criminal attempt to purchase marijuana — and that trial counsel therefore could not successfully assert a defense of justification by self-defense. However, as trial counsel observed at the hearing on Brooks' motion for new trial, no evidence showed that a drug deal was in progress when the shooting occurred. While Gay readily acknowledged that Tinch was a drug dealer, on cross-examination Gay denied that a drug deal was taking place at the time of the shooting or that it was a "drug deal gone bad." No drugs

---

[9] An eyewitness testified that a fourth man, dressed in camouflage pants, emerged from the house and fired at the car until his gun jammed. Police found a man in camouflage pants inside the house, questioned him, and found gunpowder residue on his hands. This man, later identified as Chravis Shaw, testified at trial but denied firing at the car, contending that he was inside the house and upstairs throughout the incident. In his closing argument, in addition to asserting self-defense, Brooks' trial counsel suggested that Shaw could have fired the fatal shot based upon the trajectory of the bullets and Tinch's possible location at the time shots were fired.

were found in the car.[10]

Moreover, "counsel's statements in closing argument were not evidence, as Georgia law has long held. Indeed, the trial court so instructed the jury." (Citation omitted.) *McKie*, 306 Ga. at 112, 114 (declining to treat as admission counsel's statement in closing argument, "Yes, he's a convicted felon, we admit that all day. It's true.") (punctuation omitted). Here, the trial court likewise instructed the jury that "[e]vidence does not include . . . opening or closing remarks of the attorneys, or questions asked by the attorneys," and the jury instructions did not include the language of OCGA § 16-3-21 (b) (2) barring the assertion of self-defense in the commission of a felony. "It is presumed that the jury, which was under oath, followed the trial court's instructions unless there is clear evidence to the contrary." *Menefee v. State*, 301 Ga. 505, 516 (4) (b) (801 SE2d 782) (2017). Given the lack of evidence and the

---

[10] The forensic investigator found only what he testified was drug paraphernalia and some "remnants of small green leafy material fragments" in the vehicle. The only drugs found were in a plastic bag discovered by police in the living room of the house from which Brooks emerged before the incident.

instructions the jury received, there was nothing from which the jury could conclude that Brooks was barred from asserting a claim of justification by self-defense based upon his counsel's speculation in closing argument that he may have been attempting to purchase marijuana.

Brooks' claim that trial counsel was ineffective in failing to assert a defense of justification by defense of habitation is also without merit. Again citing *Swanson*, 306 Ga. at 156 (2), Brooks contends that his trial counsel was deficient in failing to assert this defense because slight evidence supported the theory that Tinch and Gay committed an "unlawful . . . attack upon a habitation," i.e., their own vehicle, to commit two felonies: an armed robbery and aggravated assault upon Brooks. See OCGA § 16-3-23. But this interpretation is belied by the language of OCGA § 16-3-23, which provides that deadly force may be used only when an *"entry is made or attempted* in a violent and tumultuous manner" or "for the purpose of committing a felony[.]" (Emphasis supplied.) OCGA § 16-3-23 (1), (3). It does not contemplate the use of deadly force when no

entry is made or attempted.

During the incident in question, neither Tinch nor Gay "entered" the vehicle, as they were already inside at the time Brooks entered it. Cf. *Kendrick v. State*, 287 Ga. 676, 679-680 (3) (699 SE2d 302) (2010) (trial court did not err in denying request to charge on defense of habitation when appellant chased down his stolen car and shot driver; use of deadly force after theft complete not "necessary to prevent or terminate the other's unlawful entry into or attack upon a motor vehicle") (punctuation omitted). And it is doubtful in any event whether Brooks could claim the victims' vehicle as *his* "habitation" as opposed to the "habitation" of the victims, the driver and owner.  See *Hammock v. State*, 277 Ga. 612, 616 (3) (592 SE2d 415) (2004) (holding that, "for purposes of OCGA § 16-3-23, a person's habitation can be a particular space in a jointly-occupied dwelling provided that such person has obtained the right to occupy that space *and exclude his co-inhabitants therefrom*.") (emphasis supplied). And, as this Court has observed, "our precedents do not clearly establish that a person can claim the defense of habitation to

protect the habitation of another." *Williams v. State*, 304 Ga. 455, 457 (2) (818 SE2d 653) (2018) (no deficient performance for failing to request charge on defense of habitation when appellant, member of nightclub performer's entourage, claimed that victim and his brothers attacked performer's car, while appellant was in another vehicle).

Brooks claims that "there is no Georgia precedent holding that the defense of habitation may only be claimed by the owner or possessor of the habitation."[11] But this is not the correct analysis for a claim of ineffective assistance of counsel. "The standard for effectiveness of counsel does not require a lawyer to anticipate changes in the law or pursue novel theories of defense." (Citation and punctuation omitted.) *Sawyer v. State*, 308 Ga. 375, 383 (2) (a) (839 SE2d 582) (2020). "An attorney's decision about which defense

---

[11] We have found no Georgia precedent in which a defense of habitation claim was asserted by a casual visitor or passenger in a vehicle as against the actual owner or driver. In the cases cited by Brooks, the appellants either owned and were driving the vehicle involved, as in *Swanson*, 306 Ga. at 153 (1), and *Benham v. State*, 277 Ga. 516, 516 (591 SE2d 824) (2004), or, like Gay, were operating the vehicle with the permission and in the presence of the owner, as in *Coleman v. State*, 286 Ga. 291, 298 (6) (a) (687 SE2d 427) (2009).

to present is a question of trial strategy, and trial strategy, if reasonable, does not constitute ineffective assistance of counsel." (Citation and punctuation omitted.) *Mann v. State*, 307 Ga. 696, 705 (3) (a) (838 SE2d 305) (2020). The record shows that trial counsel's defense of justification by self-defense was based upon the evidence and an established legal theory and constituted a reasonable trial strategy. Failing to interpose a novel defense of doubtful application to these facts did not constitute deficiency. "[Brooks'] trial lawyer did not perform deficiently when he failed to pursue a jury charge that would have required an extension of existing precedents and the adoption of an unproven theory of law." *Williams*, 304 Ga. at 458 (2).

3. Finally, Brooks asserts as error the trial court's denial of his motion for a mistrial based on a witness' testimony. During the direct examination of Gay, the prosecutor asked if Gay knew the individual identified as "Black Boy." The following exchange occurred:

GAY: I seen him — I ain't never really know him like that.

All I heard he was, like, in jail for a long time, or something like that.

DEFENSE COUNSEL: Objection. Move to strike.

COURT: I sustain the objection. And I'm informing the jury that that is not part of the evidence, that was improper.

Brooks immediately moved for a mistrial. The trial court reserved ruling on the motion, remarking that "I may well grant it at some point." The prosecutor inquired whether a curative instruction might be of some benefit, and the trial court responded that it had already instructed the jury that the statement was improper and not part of the evidence. As Brooks acknowledges, however, the trial court never ruled on his motion for mistrial, and even though the trial court noted at a later time that it had not ruled on the motion, Brooks never sought or received a ruling. "It is the duty of counsel to obtain a ruling on his motions or objections," and failure to do so will result in waiver for purposes of appeal. (Citation and punctuation omitted.) *Smith v. Stacey*, 281 Ga. 601, 602 (1) (642 SE2d 28) (2007). See also *Carman v. State*, 304 Ga. 21, 34 (3) (815 SE2d 860) (2018).

Brooks contends that his enumeration of error nevertheless should be reviewed for "plain error" under *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). But in Georgia, plain error review is limited to

> the sentencing phase of a trial resulting in the death penalty, a trial judge's expression of opinion in violation of OCGA § 17-8-57, and a jury charge affecting substantial rights of the parties as provided under OCGA § 17-8-58 (b), [and, f]or cases tried after January 1, 2013, with regard to rulings on evidence, a court is allowed to consider plain errors affecting substantial rights although such errors were not brought to the attention of the court. OCGA § 24-1-103 (d).

(Citation and punctuation omitted.) *Ross v. State*, 296 Ga. 636, 639 (2) n.6 (769 SE2d 43) (2015). This Court has declined to extend plain error analysis to other claims of error in the absence of a specific provision by the General Assembly. See id.; *Gates v. State*, 298 Ga. 324, 328-329 (4) (781 SE2d 772) (2016).

*Judgment affirmed in part and reversed in part, and case remanded with direction. All the Justices concur.*

DECIDED AUGUST 24, 2020.

Murder. Fulton Superior Court. Before Judge Downs.

*Matthew K. Winchester*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Juliana Sleeper, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Eric C. Peters, Assistant Attorney General*, for appellee.