312 Ga. 268
FINAL COPY

S21A0877.  VIVIAN v. THE STATE.

MCMILLIAN, Justice.

Nathaniel Vivian appeals his convictions for felony murder and

related crimes in connection with the shooting death of Daniel

Zeitz.[1] Vivian contends on appeal that the trial court erred in failing

---

[1] Zeitz was killed on September 12, 2014, and on September 22, 2014, a Fulton County grand jury indicted Vivian and Kayla Dixon in connection with Zeitz's death, charging them jointly with malice murder and possession of a firearm during the commission of a felony. Vivian and Dixon were re-indicted on December 5, 2014, and charged jointly with malice murder (Count 1), felony murder (Count 2, predicated on armed robbery, and Count 3, predicated on aggravated assault), armed robbery (Count 4), aggravated assault (Count 5), possession of a firearm during the commission of a felony (Count 6), and cruelty to children in the third degree (Count 7).

Dixon entered a guilty plea to reduced charges prior to trial, and her convictions and sentences are not part of this appeal. Vivian was tried before a jury from August 15 to 17, 2016, and convicted of all counts except malice murder. The trial court sentenced Vivian to serve life in prison on each count of felony murder, ten years in prison for armed robbery, and twelve months in prison for cruelty to children, all to run concurrently with one another. The trial court also sentenced Vivian to five years on the firearm-possession charge, to run consecutively to Count 2, but suspended that sentence, and merged the aggravated assault conviction into the felony murder conviction under Count 2. As discussed further in Division 3, because the trial court erred in sentencing Vivian on both felony murder convictions, we are vacating his convictions and remanding the case to the trial court for resentencing.

to advise him of his right to represent himself at trial and asserts that he received ineffective assistance of counsel based on his trial counsel's failure to (1) object to the introduction of his and his co-defendant's cell phones as exhibits at trial; (2) object to an alleged non-unanimous verdict on the charge of possession of a firearm during the commission of a felony; (3) challenge the grand and petit jury composition; and (4) request a jury instruction on mere association. We conclude that there is no merit to these arguments, but because the trial court erred in sentencing Vivian on two separate counts of felony murder, we vacate those convictions and remand the case to the trial court for resentencing.

The evidence at trial showed that on the afternoon of September 12, 2014, Vivian texted Zeitz to inquire about a PlayStation 4 gaming console that Zeitz had listed for sale on

Vivian filed a timely motion for new trial on August 18, 2016, and amended that motion through new counsel on January 4, 2019, and June 13, 2019. The trial court denied the motion for new trial as amended on September 3, 2019. Vivian filed a timely notice of appeal, and his appeal was docketed to the April 2021 term of this Court and submitted for a decision on the briefs.

Craigslist. The two men arranged to meet that night at Zeitz's apartment in Sandy Springs. At around the same time, Kayla Dixon, who was Vivian's girlfriend, texted Vivian, "U wanna rob him," and Vivian replied, "Yea." Over the next two hours, Vivian and Dixon texted each other to discuss how they would rob Zeitz, including who would hold the gun they planned to bring with them, with Vivian suggesting that Dixon hold the gun and Dixon suggesting that Vivian point the gun at Zeitz.

Around 9:12 that night, Vivian texted Zeitz to say he was outside Zeitz's apartment, and Zeitz replied by text to say that he was "[c]oming out now." Vivian later told the police that when Zeitz came to the car, Vivian took the gaming console from him. Zeitz then grabbed Vivian's steering wheel, and Dixon shot the gun, injuring Vivian's hand. Vivian and Dixon left the scene and drove to Northside Hospital to get medical treatment for Vivian.

Around 9:30 p.m., Sandy Springs Police officers responded to a "person-down" call and discovered Zeitz lying dead in the parking lot of his apartment complex. Meanwhile, a Brookhaven Police

officer responded to a report of a patient with a gunshot wound to the hand at Northside Hospital. The Brookhaven officer identified the patient as Vivian and asked him what had happened. Vivian said that he had been shot at an apartment complex in Brookhaven (the "Brookhaven apartment"). Vivian told the officer that he was not sure who had shot him, that Dixon had driven him to the hospital, and that she was outside in the hospital parking lot.

The officer arranged to meet Dixon in the parking lot. Dixon arrived for the meeting in Vivian's car and appeared to be very distressed as she exited the car with her child. The officer observed a large amount of blood inside the car and asked Dixon what happened. Dixon replied that Vivian had been shot in the hand in the Brookhaven apartment's parking lot. Dixon said that she had taken a gun out of the glovebox, dropped it, and then put it back, and that she might have shot the gun but was not sure. She told the Brookhaven officer that the gun was in the car's glovebox. The officer then returned to the hospital and obtained Vivian's written permission to search the car. During that search, the police

4

recovered a gun from the glovebox and a PlayStation gaming console from the trunk.

When a Brookhaven Police detective spoke with Vivian inside the hospital about his injuries, Vivian first told the detective that he and Dixon had gone to the Brookhaven apartment to pick up some of Dixon's friends, and that while speaking with some men there, Vivian heard a gunshot, jumped back in his car, and only later realized he had been shot. However, Vivian eventually admitted to taking a gaming console and said that Dixon had shot him accidentally as they were trying to leave the scene. After Vivian revealed that the shooting occurred at Zeitz's apartment in Sandy Springs, the detective contacted the Sandy Springs police and transferred the case to them.

Vivian and Dixon were subsequently taken into custody and transported to the Sandy Springs Police Headquarters. During an interview there with a Sandy Springs Police detective, Vivian admitted that he and Dixon planned to steal the PlayStation. It was during this interview that Vivian said that when he took the

PlayStation console, Zeitz grabbed the steering wheel of Vivian's car, and Dixon fired the gun. Police recovered Vivian's cell phone from his pocket and discovered messages between Vivian and Zeitz relating to the sale of the PlayStation on Craigslist. In addition to the text messages, an analysis of Vivian's phone revealed a "fake number texting app"[2] and a September 5, 2014 Internet search for "how to rob someone."

The medical examiner testified that Zeitz suffered a gunshot wound to the right side of his neck, resulting in his death, and the gun found in Vivian's car was later matched to a shell casing found at the scene of Zeitz's shooting.

1. Vivian first asserts that the trial court erred by failing to conduct a hearing on his request for new counsel and advise him that he had the right to represent himself at trial if he was dissatisfied with his appointed counsel.

Prior to jury selection on the scheduled trial date, Vivian

[2] The evidence showed that such an app generates a fake number that appears on a text recipient's screen in place of a phone's assigned number, and Vivian's texts appeared under a fake number on Zeitz's phone.

requested a hearing for new counsel. When the trial judge asked Vivian to state his complaint with his appointed trial counsel, Vivian replied, "Well, for one I just found out about this trial on Wednesday [the day before]. That's not enough time to prepare for a trial." The judge responded it was trial counsel, not Vivian, who had to prepare for trial. Vivian then said that he would have liked for his family to have been there "and stuff like that." After the trial judge explained that the first day would primarily involve selecting a jury and that Vivian's family was welcome to come for the rest of the trial, Vivian replied, "All right." And when the trial judge asked Vivian if he had any other complaints, Vivian stated, "That's it for right now."

The trial judge then told Vivian that he was always welcome to hire a lawyer, but the trial had been specially set, the jury was waiting, and they were prepared to go forward. In response, Vivian asked, "What are my options?" The trial judge replied that Vivian had the option to proceed to trial, where he was facing an overall life sentence plus five years, or to seek to negotiate a guilty plea before the trial began. However, the trial court indicated that the trial

7

would begin shortly because it had been specially set, jurors were present, and the proceedings were already running late. Vivian responded: "Okay. We can go ahead."

Vivian argues, citing *Nelson v. State*, 274 S2d 256 (Fla. Dist. Ct. App. 1973), that the trial court erred in failing to inform him that he also had the option of representing himself at trial. According to Vivian, following the reasoning set forth in *Nelson*, the State of Florida now mandates that a defendant receive a hearing upon request to determine whether he is being adequately represented. He asserts that defendants in Georgia likewise are entitled to a hearing to determine whether they can discharge appointed counsel, even if that means a defendant must represent himself. Therefore, he contends that after determining that Vivian was being adequately represented, the trial judge should have informed Vivian that he had a right to represent himself. We disagree.

The right of a criminal defendant to self-representation is guaranteed by the Sixth Amendment to the United States

Constitution.[3] See *Faretta v. California*, 422 U.S. 806, 819 (III) (A) (95 SCt 2525, 45 LE2d 562) (1975); *Burney v. State*, 309 Ga. 273, 279 (2) (845 SE2d 625) (2020); *Wiggins v. State*, 298 Ga. 366, 368 (2) (782 SE2d 31) (2016).

> To avail himself of this right, a defendant must clearly and unequivocally assert his desire to represent himself. If an unequivocal invocation is made, it must be followed by a hearing to ensure that the defendant knowingly and intelligently waives the traditional benefits associated with the right to counsel and understands the disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open.

*Burney*, 309 Ga. at 279-80 (2) (citation omitted). But in the absence of a clear and unequivocal expression of a desire for self-representation, the trial court is not required to hold a hearing. See id.; *Oliver v. State*, 305 Ga. 678, 680 (2) (827 SE2d 639) (2019).

Here, Vivian made no assertion of a desire to represent himself

---

[3] Vivian raises this claim solely under the Florida court's interpretation of the Sixth Amendment in *Nelson*, and we therefore consider Vivian's argument in the context of the U.S. Constitution. However, we note that the Georgia Constitution also provides a defendant the right to self-representation. See Ga. Const. of 1983, Art. I, Sec. I, Par. XII ("No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state.").

9

at trial. To the contrary, Vivian asked for a hearing for "new counsel." Therefore, the trial court was not required to hold a hearing to address the issue of self-representation in this case. Vivian has not identified, nor could we locate, any binding authority requiring trial courts in this State to inform a defendant sua sponte of the option to represent himself when he or she merely asks for new counsel, and we see no reason to adopt *Nelson*. Accordingly, we discern no error.

2. Vivian further argues that the trial court erred in failing to grant his motion for new trial based on his claims of ineffective assistance of trial counsel. None of his claims has merit.

To prevail on such claims, a defendant must show that his trial counsel's performance was deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. See *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove deficient performance, Vivian must establish that his counsel "performed at trial in an objectively unreasonable way considering

10

all the circumstances and in light of prevailing professional norms," *Lofton v. State*, 309 Ga. 349, 360 (6) (846 SE2d 57) (2020), and in doing so, he "must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct." *Kilpatrick v. State*, 308 Ga. 194, 201 (7) (839 SE2d 551) (2020) (citation and punctuation omitted). To show a reasonable probability of a different trial result, as required to establish the requisite prejudice under *Strickland*, Vivian must demonstrate "a probability sufficient to undermine confidence in the outcome [of his trial]." *Strickland*, 466 U.S. at 694 (III) (B). If Vivian fails to establish either prong of the *Strickland* test, we need not examine the other. See id. at 687 (III); *DeLoach v. State*, 308 Ga. 283, 288 (2) (840 SE2d 396) (2020).

(a) Vivian first claims that his trial counsel rendered ineffective assistance by failing to object to the admission of his and Dixon's cell phones at trial because the only authentication provided for the cell phones was through hearsay evidence.

The State introduced the two cell phones into evidence through

11

the testimony of a Sandy Springs Police investigator. The prosecutor asked the investigator how he recognized the two exhibits containing the cell phones, and the investigator replied that he recognized them through handwritten labels noting the case number and descriptions reading "Dixon Cell Phone" and "Vivian Cell Phone." Vivian asserts that the handwritten labels were hearsay and that the investigator testified that the lead investigator on the case gave the investigator the phones while the investigator was preparing warrant applications to search the devices. Therefore, Vivian asserts that the investigator lacked any independent, personal knowledge regarding the cell phones, and his trial counsel should have objected to the investigator's testimony about what the lead investigator told him.

At the hearing on the motion for new trial, Vivian's appellate attorney asked trial counsel whether she objected to the introduction of the cell phones, and she replied that she did not believe she had. But trial counsel was never asked to explain why she did not object, and Vivian offered no other evidence to show that

the lack of an objection was not a reasonable strategic decision. "In the absence of evidence to the contrary, counsel's decisions are presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim" if not patently unreasonable. *Lanier v. State*, 310 Ga. 520, 526 (3) (b) (852 SE2d 509) (2020) (citation and punctuation omitted). See also *Mitchell v. State*, 290 Ga. 490, 492 (4) (a) (722 SE2d 705) (2012) (where appellant fails to make a showing to overcome this presumption, "he has failed to show deficient performance" (citation omitted)).

Moreover, pretermitting whether the cell phones were properly authenticated, Vivian's claim of ineffective assistance fails because he does not argue, must less demonstrate, that the State could not have provided additional foundational support for the admission of the cell phones if his counsel had objected. And as this Court previously held, "refraining from objecting to foundational matters that can be readily cured is not an unreasonable strategy." *Hayes v. State*, 298 Ga. 98, 105 (2) (c) (779 SE2d 609) (2015). See also *Wallace v. State*, 296 Ga. 388, 393 (4) (d) (768 SE2d 480) (2015) (claim of

13

ineffective assistance of counsel based on failure to object for lack of foundation fails where defendant "made no showing that a proper foundation could not have been laid if any additional foundation was necessary"). Therefore, Vivian has failed to establish ineffective assistance of counsel on this ground.

(b) Vivian next asserts that his trial counsel was ineffective in failing to file a demurrer to Count 6, charging possession of a firearm during the commission of a crime, and to object to the trial court's instruction to the jury regarding that charge, which Vivian contends allowed the jury to return a non-unanimous verdict.

However, Vivian failed to raise any claims of ineffective assistance of counsel on these grounds in his motion for new trial, as amended, or at the hearing on that motion, which presented his first opportunity to do so, and the trial court did not rule on these grounds; therefore, these issues are not preserved for appellate review by this Court. See *Lopez v. State*, 310 Ga. 529, 535 (3) (e) (852 SE2d 547) (2020) (claim of ineffective assistance of counsel not preserved for appeal where it was not raised at defendant's first

14

opportunity); *Elkins v. State*, 306 Ga. 351, 361 (4) (a) (830 SE2d 217) (2019) (failure to raise claim of ineffective assistance of trial counsel "at the earliest practicable moment" waives the issue for appellate review).

(c) Vivian further contends that his trial counsel was deficient in failing to challenge the composition of his grand and petit juries, because the juries were selected from a list that this Court determined in *Ricks v. State*, 301 Ga. 171 (800 SE2d 307) (2017), violated the Court's Jury Composition Rule (the "Rule").[4] Vivian notes that he was indicted by the grand jury on December 5, 2014, and *Ricks* determined that Fulton County violated the Rule for a period of time including that date. See 301 Ga. at 189 (5) (a), 191-92 (5) (c). Vivian also asserts that the trial jury was selected from a defective list because he was tried in 2016 and the jury list was not

---

[4] This Court adopted the Rule to effectuate the Jury Composition Reform Act of 2011, Ga. L. 2011, p. 59. See *Ricks*, 301 Ga. at 173 (1). The full text of the current version of the Rule can be found on this Court's website. See https://www.gasupreme.us/wp-content/uploads/2019/04/JURY_COMPOSITION_RULE_2019-04-11.pdf.

updated until after the *Ricks* decision in 2017.

But as Vivian notes, our decision in *Ricks* was issued in 2017, over seventeen months after Vivian was indicted and approximately nine months after he was tried and convicted.[5] It is well settled that "[t]he standard for effectiveness of counsel does not require a lawyer to anticipate changes in the law or pursue novel theories of defense." *Brooks v. State*, 309 Ga. 630, 637 (2) (847 SE2d 555) (2020) (citation and punctuation omitted). See also *Esprit v. State*, 305 Ga. 429, 438 (2) (c) (826 SE2d 7) (2019) ("A criminal defense attorney does not perform deficiently when he fails to advance a legal theory that would require an extension of existing precedents and the adoption of an unproven theory of law." (citation and punctuation omitted)). Accordingly, this claim of ineffective assistance of counsel lacks merit.

(d) Vivian also argues that his trial counsel was ineffective in

---

[5] Although Vivian did not ask his trial counsel at the motion hearing why she chose not to challenge the jury panels, trial counsel testified, in response to questioning by the State, that at the time of Vivian's trial, which was before *Ricks* was issued, she had never heard of a successful challenge to jury composition under the Rule.

16

failing to request a jury instruction on "mere association." Vivian asserts that if his trial counsel had requested that instruction, the jury would have been informed that it was not authorized to find a person guilty by mere association with another person who committed the crime unless the evidence shows beyond a reasonable doubt that the associated person actually perpetrated or participated in the crime. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.43.31. Pretermitting whether Vivian's counsel performed deficiently in failing to ask for such a charge, however, Vivian's claim of ineffective assistance fails because he cannot show the requisite prejudice under *Strickland*.

The trial court charged the jury on the presumption of innocence, the State's burden to prove each element of the crimes charged beyond a reasonable doubt, party to a crime, and the lack of a presumption of criminal intent. Those instructions included that "[a] person is a party to a crime only if that person directly commits a crime or intentionally helps in the commission of the crime or intentionally advises, encourages, counsels or procures another to

17

commit the crime" and that "[f]acts and circumstances that merely place upon the defendant a grave suspicion of the crimes charged or that merely raise a speculation or a conjecture of the defendant's guilt are not sufficient to authorize a conviction of the defendant." We conclude that the trial court's charge, when viewed as a whole, was an accurate statement of the applicable law, and the "mere association" charge would have added little, if any, to these instructions. Moreover, the evidence that Vivian was a knowing participant in the armed robbery, including his texts with Dixon planning the crimes, was strong. Under these circumstances, Vivian has failed to show a reasonable probability that his trial would have ended more favorably for him had trial counsel requested a charge on "mere association." See *Hood v. State*, 303 Ga. 420, 427 (2) (b) (811 SE2d 392) (2018) (where the trial court's charge adequately instructed the jury on the legal principles involved in the omitted charge, appellant failed to demonstrate a reasonable probability that his trial would have ended more favorably had counsel requested an additional charge); *Robinson v. State*, 278 Ga. 836, 838

18

(5) (607 SE2d 559) (2005) (trial court was not required to sua sponte charge the jury on "mere association" where jury instructions were applicable to issues and evidence at trial, and they substantially covered the same principles involved in the omitted charge). Therefore, Vivian cannot establish his claim of ineffective assistance of counsel on this ground.

3. Finally, we conclude, and the State concedes, that the trial court erred in sentencing Vivian to a life sentence on each of his two felony murder convictions when there was only one victim in this case. See *Martin v. State*, 308 Ga. 479, 484 (3) (841 SE2d 667) (2020); *Coe v. State*, 274 Ga. 265, 266 (2) (553 SE2d 784) (2001). Instead, one of the two felony murder verdicts was vacated by operation of law. See *McCoy v. State*, 303 Ga. 141, 144 (3) (810 SE2d 487) (2018). "And . . . the decision as to which of the felony murder verdicts should be deemed vacated — a decision that may affect which other verdicts merge and thus what other sentences may be imposed — is left to the discretion of the trial court on remand[.]" *Martin*, 308 Ga. at 484 (3) (citation and punctuation omitted). Therefore, we vacate

19

Vivian's convictions for felony murder and remand the case to the trial court for resentencing in accordance with this opinion. See id.; *Cowart v. State*, 294 Ga. 333, 336 (2) (751 SE2d 399) (2013).

*Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur, except Colvin, J., not participating.*

Decided August 10, 2021.

Murder. Fulton Superior Court Before Judge Dunaway.

*Benjamin A. Davis, Jr.*, for appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, Marc A. Mallon, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General*, for appellee.