NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: January 21, 2026

S25A0994.  FRANKLIN v. THE STATE.

COLVIN, Justice.

Appellant Marco Franklin was convicted of felony murder and a related crime in connection with the shooting death of Jamarco Royal.[1] On appeal, he argues that his trial counsel was ineffective

---

[1] The crimes occurred on December 3, 2018. On March 5, 2019, a Dekalb County grand jury returned an indictment against Appellant and Cortez Nabors, which charged Appellant with malice murder (Count 1), felony murder (Counts 2 and 3), armed robbery (Count 4), aggravated assault (Count 5), and possession of a firearm during the commission of a felony (Count 6). Appellant was tried separately before a jury in March 2022, but the trial ended in a mistrial. Appellant was then retried from September 12 through 16, 2022. The jury found Appellant guilty of all charges against him except for malice murder (Count 1). The trial court sentenced Appellant to life in prison with the possibility of parole for felony murder (Count 2) and imposed a consecutive term of five years in prison for possession of a firearm during the commission of a felony (Count 6). The court merged Counts 4 and 5 with Count 2 for sentencing purposes. And although the trial court purported to merge the felony murder count charged in Count 3 with the felony murder count charged in Count 2, Count 3 was actually vacated by operation of law. See *Noel v. State*, 297 Ga. 698, 700 (2015).

Appellant timely filed a motion for new trial on September 19, 2022, and amended the motion through new counsel on May 14, 2024, and September 19,

for failing to move to suppress evidence obtained from a warrantless search of a Motorola phone found at the scene of the crime, as well as evidence obtained pursuant to a search warrant for an iPhone found at Appellant's mother's house. For the reasons explained below, we affirm.

1. The evidence presented at trial showed the following. Around 7:00 p.m. on December 3, 2018, Royal, who was a drug dealer, was napping with his girlfriend, Daysha Hollings, at a relative's apartment on Covington Highway in DeKalb County. While in bed, Hollings heard Royal's phone ring, and Royal answered, saying, "I'm not there yet. I'll be there in about ten minutes." Hollings then heard someone knocking on the door. While Hollings stayed in bed, Royal went downstairs with a "rifle" style gun, after which Hollings heard Royal say, "f**k," and a gunshot rang out. Hollings then went downstairs, finding Royal lying on the

2024. Following a hearing, the trial court denied Appellant's motion for new trial on December 2, 2024. Appellant timely filed a notice of appeal directed to this Court. The case was docketed to this Court's August 2025 term and submitted for a decision on the briefs.

floor, shot but still breathing. The gun Royal had carried to the door was gone.

Carmesha Pearson, who was visiting a friend at the apartment complex at the time, heard someone scream that "Marco" had been shot. She saw "two young boys" running from the direction of the screaming and testified that one of the "boys" doubled back to pick up a shoe he had dropped before "r[unning] behind the building."

Officers responded to a call of shots fired and found Royal lying dead on the floor, face down in a "puddle of blood." The State's medical examiner later determined that Royal had died from a single gunshot wound to his arm.

While securing the scene, officers found a Motorola phone lying about 17 feet from Royal's open apartment door and in the direction in which Pearson saw the "boys" running. A warrantless extraction of the Motorola phone revealed that the device was registered to Appellant's mother; that the device had access to a social media account with the handle "312sparc," which was registered to an email address with a handle containing Appellant's name

("marcofranklin312"); and that the "312sparc" social media account communicated with two other accounts, "bigsmoke_tezo" (which the trial evidence indicated belonged to Appellant's co-indictee, Cortez Nabors) and "bnj_20" (which belonged to an unknown individual).

Records from the social media accounts were obtained from the social media company pursuant to a search warrant. In relevant part, those records, which were introduced into evidence at trial and explained by an officer familiar with "street vernacular" and "shorthand that's used in text messages," showed the following. Three days before the shooting, bigsmoke_tezo messaged 312sparc, "need to hit that plug" (with "plug" meaning a "go-to for the dope"). 312sparc stated, "Hell you want we can." And bigsmoke_tezo responded, "uk I do."

Two days before the shooting, 312sparc messaged bigsmoke_tezo, "[g]otta lick" (with "lick" referring to an armed robbery). bigsmoke_tezo then messaged bnj_20, "Sparc gotta move." bnj_20 responded, "ight cum get me to[o]," and asked, "what type of move is it[?]" bigsmoke_tezo answered, "[g]uns [m]oney," and bnj_20

4

said, "Let me get da gun tho." bigsmoke_tezo responded, "talk to sparc street."

On the day before the shooting, bigsmoke_tezo asked, "what y'all finna get into[?]" 312sparc responded, "he not even answering but prolly stain buddy" (with "stain" referring to robbery). Later that day, bigsmoke_tezo asked 312sparc, "[w]tm" (meaning "what is the move" or "what are we doing"). 312sparc responded, "IDK you know what I'm trying to do." 312sparc then said, "[r]ob every plug in [A]merica," and, "we can rob Covington highway after this," to which bigsmoke_tezo responded, "s**t he should."

At 6:28 p.m. on the day of the shooting, 312sparc messaged bigsmoke_tezo, "[w]e pulling up." bigsmoke_tezo responded, "iggt." At 6:50 p.m., 312sparc messaged bigsmoke_tezo, "[c]ome down here." No further exchange of messages occurred.

Several days after the shooting, officers visited the home of Appellant's mother to speak to her about the Motorola phone left at the scene of the crime, which was registered to her. Appellant's sister, Essence, opened the door and allowed the officers to come

5

inside. Once inside, officers observed Appellant inside the house with a friend and saw an iPhone in the area where Appellant appeared to be staying. Essence claimed that the phone was hers and unlocked it for the officers, revealing contents that belonged to Appellant, rather than Essence. At that point, Essence told the officers that, "after [Appellant] lost his phone, she specifically let him use [the iPhone]."

Officers seized the iPhone and later searched it pursuant to a search warrant. The contents of the phone, which were admitted into evidence at trial, revealed several searches for "Covington highway shooting" starting less than an hour after the shooting, as well as a search inquiry the next day for "what caliber is 5.56 x 45." At trial, a firearms expert testified that an AR-15 style rifle typically utilizes a .223 Remington or 5.56 as ammunition.

The record shows that Appellant was later interviewed at the police department, where he waived his *Miranda*[2] rights and agreed to speak to the detectives. During his interview, which was video

_____

[2] *Miranda v. Arizona*, 384 US 436 (1966).

6

recorded and played for the jury at trial, Appellant gave conflicting stories about what happened on the day of the shooting. First, Appellant said that he went to an apartment complex off "Covington" to buy marijuana from a person he knew only as "Bean." When he arrived, there were other people waiting to buy drugs there as well, and Bean invited him inside. Appellant said that another customer then told Bean to "give [him] everything" and pulled out a gun, at which point Appellant ran. According to Appellant, he dropped his "shoe" as he ran but went back to get it before continuing to run away.

When confronted with the social media records obtained from the Motorola phone, which appeared to discuss a robbery on Covington Highway, Appellant changed his story. Appellant admitted that he went by the name "Sparc." Appellant further admitted that he rode to the apartment complex with a person known both as "Trezzo" and "Big Smoke," who, according to an officer's trial testimony, Appellant later identified in a photo lineup as co-indictee Nabors. In his interview, Appellant said that Trezzo

7

told the victim, "B\*\*ch give me everything." According to Appellant, the victim then tried to reach for the victim's gun, creating a "kill[ ] or be killed situation," at which point Trezzo shot the victim "once." Appellant further said that Appellant grabbed two items from the victim, an "AR with a tan clip" and "twelve grams of crack."

When the detectives showed Appellant the Motorola phone found at the crime scene, Appellant admitted that he recognized the phone, and that he was "with her [i.e., his mother's] phone" when the shooting occurred, and that he told his mother that he "lost her phone."

2. Appellant argues that trial counsel was constitutionally ineffective for failing to move to suppress evidence obtained from the warrantless search of the Motorola phone and from the search of the iPhone pursuant to an overbroad warrant. Both of these claims fail.

To establish a claim of ineffective assistance of counsel, a defendant must show that his trial counsel's performance was deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been

8

different. *Vivian v. State*, 312 Ga. 268, 272 (2021) (citing *Strickland v. Washington*, 466 US 668, 687 (1984)). To prove deficient performance, Appellant must establish that his counsel "performed at trial in an objectively unreasonable way considering all the circumstances in light of prevailing professional norms, and in doing so, he must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct." *Vivian*, 312 Ga. at 272 (cleaned up). "When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." *Feder v. State*, 319 Ga. 66, 70 (2024) (quotation marks omitted). If Appellant fails to establish either prong of the *Strickland* test, we need not examine the other. See *Vivian*, 312 Ga. at 273.

(a) First, Appellant has not shown that trial counsel was deficient for failing to move to suppress evidence obtained from the warrantless search of the Motorola phone found at the crime scene.

The trial court rejected this claim, concluding that a motion to suppress would have been denied on the basis that the Motorola phone had been abandoned. In reaching this conclusion, the court noted that the evidence showed that Appellant dropped the phone while fleeing the scene, and that there was no evidence that Appellant had made any effort to recover the phone. As explained below, we discern no error in the trial court's ruling.

"The question of abandonment for Fourth Amendment purposes does not turn on strict property concepts but on whether the accused has relinquished his interest in the property to the extent that he no longer has a reasonable expectation of privacy at the time of the search." *Teal v. State*, 282 Ga. 319, 328 (2007) (cleaned up).

Here, as the trial court correctly concluded, the record supported a determination that Appellant had relinquished his interest in the Motorola phone and had therefore abandoned it. The record showed that Appellant dropped the phone while fleeing the scene. And although there was evidence that Appellant went back

10

to retrieve another item of personal property that he had dropped while running away (his shoe), there was no evidence suggesting that he made any efforts to retrieve the Motorola phone. Further, the evidence indicated that Appellant had relinquished the Motorola phone because, after leaving the Motorola behind, he obtained a different phone from his sister to use in place of the Motorola. We have held that a defendant who, like Appellant, dropped property while fleeing the scene had abandoned his property for Fourth Amendment purposes. See *Teal*, 282 Ga. at 328 (holding that the defendant had "abandoned" a duffel bag "found … sitting in grass near the driveway after [the defendant] had fled from the premises," and that the trial court properly denied a motion to suppress evidence obtained from the bag on that basis). See also *Burgeson v. State*, 267 Ga. 102, 103, 106 (1996) (holding that, where a defendant "fle[d] on foot" during an "attempted police stop," the defendant "abandoned, for Fourth Amendment purposes, the stolen vehicle and her personal belongings inside"). Because this precedent and the record as a whole supported an abandonment finding, a motion

11

to suppress evidence obtained from the Motorola phone "would not clearly have succeeded," and thus "trial counsel was not deficient in failing to make such a motion." *Pugh v. State*, 318 Ga. 706, 723 (2024) (cleaned up).[3]

(b) Second, Appellant argues that trial counsel was constitutionally ineffective for failing to move to suppress evidence obtained pursuant to a search warrant for the iPhone found at Appellant's mother's house. Relying on *State v. Wilson*, 315 Ga. 613 (2023), Appellant argues that trial counsel should have moved to suppress this evidence on the basis that the warrant for the iPhone authorized an all-data search of the phone and thus failed to satisfy

---

[3] To the extent that Appellant argues that trial counsel should have moved to suppress evidence indirectly derived from the initial warrantless search of the Motorola phone under the fruit-of-the-poisonous-tree doctrine, that argument also fails. A violation of constitutional rights is "a pre-requisite for the suppression of derivative evidence" under the fruit-of-the-poisonous-tree doctrine. See *State v. Ledbetter*, 318 Ga. 457, 468 (2024). See also *State v. Chulpayev*, 296 Ga. 764, 773 (2015) (explaining that, under "the fruit of the poisonous tree doctrine, the court must suppress … evidence derived from *the tainted primary evidence*" (emphasis added)). And because Appellant has not made a strong showing that the warrantless search of the Motorola phone violated his constitutional rights, he cannot make a strong showing that derivative evidence obtained as a result of that search would have been suppressed as fruit of the poisonous tree.

the particularity requirement of the Fourth Amendment to the United States Constitution.[4] We conclude, however, that Appellant has failed to show deficient performance.

---

[4] Appellant also claims on appeal that trial counsel was ineffective for failing to move to suppress evidence obtained pursuant to the search warrant for the iPhone because the warrant application failed to establish a nexus between the phone and the crime and therefore failed to provide probable cause. But Appellant did not enumerate this ineffective-assistance-of-counsel claim in his motion or amended motions for new trial. He claimed only that "[t]rial counsel provided ineffective assistance of counsel by failing to move to suppress the search of his [iPhone] … on the grounds that the search warrant … was unconstitutionally overbroad." And the trial court did not rule on Appellant's probable-cause-based claim. Although Appellant argued that trial counsel was ineffective for failing to raise a probable cause challenge to the warrant in a supplemental brief in support of his motion for new trial, "[a] brief normally does not amend a motion for new trial to add new grounds." *Cowart v. State*, 294 Ga. 333, 338 (2013). And the fact that "the trial court did not address [this] ineffective assistance claim in ruling on his motion for new trial[ ] indicat[es] that the court did not treat his supplemental brief as an amendment to the motion." Id. at 338. Because Appellant, who amended his motion for new trial through new counsel, did not "amend[ ] his motion to add such a claim," the claim is "procedurally barred," and "there is no ruling on the issue for this Court to review." Id. at 337–38. Cf. *Rickman v. State*, 304 Ga. 61, 66 (2018) ("[A]lthough a trial court may under some circumstances allow a motion for new trial to be amended implicitly by treating a claim as if it had been raised in the motion, the trial court's failure to address any ineffectiveness claim in its ruling on the motion for new trial indicates an absence of any such amendment, and this means that, even though there was questioning on the issue at the hearing on the motion, there is no ruling on the issue for this Court to review." (quotation marks omitted)); *Hornbuckle v. State*, 300 Ga. 750, 756 (2017) (explaining that, "[w]hile [the defendant's] counsel arguably raised the general grounds in his brief, … a brief normally does not amend a motion for new trial to add new grounds," and holding that the defendant "abandoned the general grounds by failing to include them in the motion for new trial" (cleaned up)).

13

Here, Appellant has not made a "strong showing" that a motion to suppress evidence obtained from the iPhone on particularity grounds would have succeeded. *Pugh*, 318 Ga. at 722 (quotation marks omitted). As an initial matter *Wilson*, which issued after Appellant's trial, was "the first decision in which this Court applied the particularity requirement to invalidate a warrant that authorized a search of the entirety of electronic data contained on a cell phone and, thus, reflects an extension of existing precedent." Id. And "[t]rial counsel … cannot be deemed ineffective for failing to argue precedent that was not in existence at the time of the trial." Id. (cleaned up).

To the extent that Appellant contends that trial counsel should have made a particularity argument like the one in *Wilson*, he has not shown "that a motion to suppress on the basis argued would have succeeded" at the time of Appellant's trial. See *Pugh*, 318 Ga. at 722. "Whereas the warrant we considered in *Wilson* was, on its face, a general warrant" because "it *expressly* authorized the seizure, without limitation, of 'any and all stored electronic information,'" id.

(quotation marks omitted), the warrant for Appellant's iPhone was different in that it authorized the search and seizure of all content on the iPhone "[w]hich is important to the investigation of[ ] MURDER." Id. (quotation marks omitted). Prior to Appellant's trial, we had held that such language narrowed the scope of the data that could be searched and seized to data relevant to the crime, and on that basis we had upheld cell phone warrants challenged on particularity grounds. See, e.g., *Rickman v. State*, 309 Ga. 38, 42 (2020) (holding that warrants authorizing officers to search cell phones for "messages, photographs, videos, contacts, and any other application data, 'or any other evidence of the crime of murder'" were sufficiently particularized because the language of the warrants limited the search of the cell phones "to items reasonably appearing to be connected to the victim's murder"); *Westbrook v. State*, 308 Ga. 92, 97–98 & n.5 (2020) (holding that a search warrant for "electronic data" on the defendant's cell phone was sufficiently particularized "to enable a prudent officer to know to look for photographs and videos," and noting that the language of "[t]he warrant also limited

the scope of the search to evidence *pertaining to the commission of the murder*" (emphasis added)). Because a motion to suppress on the ground proposed by Appellant would not have clearly succeeded at the time of Appellant's trial, Appellant has not shown that trial counsel was deficient in failing to make such a motion.[5] *Pugh*, 318 Ga. at 722–23.

*Judgment affirmed. All the Justices concur.*

---

[5] Some of us question whether, as a general matter, language in a search warrant that authorizes police to search for evidence of a crime meaningfully limits the object of the search "definitely and with reasonable certainty." *Wilson*, 315 Ga. at 616–17 (Peterson, P. J., concurring) (quotation marks omitted); id. at 625 (Pinson, J., concurring) ("[I]t is not clear that warrants that allow police to search every bit of data on a cell phone necessarily avoid an unconstitutional general search merely by telling police to look only for unspecified evidence of the crime in question."). See also *Pugh*, 318 Ga. at 725 (Pinson, J., concurring) ("[T]he warrant must limit the object of the search to evidence of the crimes that the police have probable cause to believe the suspect committed. And 'evidence of murder' generally is not particular enough[.]" (citations omitted)). Nevertheless, as explained above, some of our pre-*Wilson* precedent at the time of Appellant's trial offered support for the view that this warrant satisfied the particularity requirement, which means that counsel did not render constitutionally ineffective assistance at that time by not challenging the warrant here on particularity grounds.