**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 4, 2016**

# In the Court of Appeals of Georgia

A16A0149. YARBER v. THE STATE.

PHIPPS, Presiding Judge.

So Young Yarber was turning right from one street onto a cross street when her vehicle collided with another. Police soon arrived at the scene and conducted an investigation. The state thereafter accused Yarber of DUI (less safe),[1] failure to maintain lane,[2] and improper turn at an intersection.[3] A jury found Yarber guilty as

---

[1] OCGA § 40-6-391 (a) (1) ("A person shall not drive or be in actual physical control of any moving vehicle while: . . . Under the influence of alcohol to the extent that it is less safe for the person to drive.").

[2] OCGA § 40-6-48 (1) ("A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.").

[3] OCGA § 40-6-120 (1) ("Both the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway.").

charged. Challenging her judgment of conviction, Yarber contends that the trial court erred by allowing the jury to hear a recording of the roadside call made to 911 by the other driver (who did not testify at trial). For reasons that follow, we affirm.

On September 30, 2014 at about 5:30 a.m., two police officers in their separate patrol cars happened upon the scene of the apparently recent two-vehicle collision. As the officers' trial testimony revealed, in light of events that quickly unfolded after their encounter with Yarber, one officer pursued a DUI investigation, while the other officer focused on ascertaining the driving maneuvers that had precipitated the collision.

The latter of these officers gave the following account. When they stopped at the scene, Yarber (as she was soon identified) was in the driver's seat of her vehicle. The engine was still running, and there was one passenger with Yarber. The driver of the other vehicle, as that officer testified, "was standing outside of his vehicle and was still on the phone with 911, so it had just happened." The officer approached Yarber, who already had her window down. He asked for her driver's license. Yarber was "slow to respond," but handed the officer her license. The officer saw that Yarber's eyes were watery, and he detected an odor of alcoholic beverage emanating from her breath. Yarber told the officer that she had consumed a couple of alcoholic

2

beverages during the preceding two to three hours. Discerning that Yarber was "displaying manifestations of possible impairment," the officer so notified the other officer whose expertise included DUI investigation ("the DUI officer"), before focusing on "working the accident scene."

At trial, the prosecuting attorney elicited from the officer his background in investigating car accidents, then asked the officer, "[W]hat took place in the accident?" The officer summarized, "Based on the statement from the other driver and the physical evidence, [Yarber] was on [one street] attempting to make a right turn. She turned wide and into the path of the second vehicle that was [on a cross-street] in the left-turn lane waiting to turn left."[4] The prosecuting attorney asked the officer to stand and "draw that out . . . and illustrate [that] to the jury." As the officer thereupon drew an illustration, he recapped, "[Yarber's vehicle] was . . . turning right

---

[4] While Yarber has raised no objection to this officer's testimony, we note that pursuant to Georgia's new Evidence Code, "if a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible." OCGA § 24-8-802; see *Bradshaw v. State*, 296 Ga. 650, 653 (2), n. 2 (769 SE2d 892) (2015). Accord *Hatley v. State*, 290 Ga. 480, 483 (I) (722 SE2d 67) (2012) ("The *Melendez-Diaz* [C]ourt observed that "[t]he right of confrontation may, of course, be waived, including by failure to object to the offending evidence; and States may adopt procedural rules governing the exercise of such objections."), quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313 (III) (A), n. 3 (129 SCt 2527, 174 LE2d 314) (2009) (citation omitted).

and swung wide and struck [the other vehicle] as he was sitting in the left-turn lane waiting to turn." Additionally, the officer described that, when he and the DUI officer arrived at the scene, "[Yarber's] vehicle was directly in front of the second vehicle involved."

When the DUI officer took the stand, he first recounted his specialized training and experience in DUI investigation and detection, then provided the following account of what had occurred at the scene. Upon approaching Yarber sitting in her vehicle, the officer detected a strong odor of alcoholic beverage. He immediately asked Yarber whether she had been injured or needed emergency medical services; Yarber answered that she was not hurt and did not need any such help. In response to the officer's inquiry, Yarber told the officer that she was coming from a club. Next, the officer recalled, "I asked her what happened in the accident. She told me that she was making a right turn from [one street] onto [a cross-street]."

To ascertain whether the odor of alcohol was emitting from Yarber's person (as opposed to her passenger's), the DUI officer asked Yarber to step outside the vehicle. As Yarber complied, she stumbled, and "[the officer] had to grab her arm to keep her from falling down." While talking with Yarber outside her vehicle, the officer detected a "stronger odor of alcoholic beverage coming from her person." He

4

also observed that Yarber's eyes were bloodshot and watery, and that "her speech was slurred, mumbled, and sometimes incoherent." Yarber told the officer that she had consumed two shots of a hard liquor, although she did not specify a time frame for that consumption. The officer conducted on Yarber an Alco Sensor test, which results were positive for alcohol.

The DUI officer attempted to conduct field sobriety evaluations. After giving Yarber instructions on taking a horizontal gaze nystagmus (HGN) test, the officer asked Yarber whether she understood them. But Yarber "basically didn't answer." As the officer recounted at trial, "I kept going over my instructions several times. She didn't answer at which point . . . I could not determine whether or not the HGN test would be a viable option for her because she wouldn't follow the instructions." So the officer turned to a different evaluation.

The DUI officer begin instructing Yarber on the specifics of the walk and turn test – including directing her not to start until specifically told to do so. But while the officer was physically demonstrating how to perform the test, Yarber's body "swayed." Then she began walking. The officer described, "[W]hile she was walking she stumbled, almost fell to the ground at which point I had to grab her arm again to keep her from falling so she wouldn't fall into traffic on the roadway." The officer

5

abandoned further roadside sobriety testing, having formed the opinion that Yarber was under the influence of alcohol to the extent that she was a less safe driver. He placed Yarber under arrest.

The DUI officer read Yarber the Georgia Implied Consent warnings, and gave her the opportunity to submit to a chemical test of her breath. When the officer thereafter attempted to administer such a test to Yarber using the Intoxilizer 5000, Yarber did not blow into the (designated) tube as directed; instead, "she began sucking air into her body." The officer stopped Yarber's behavior. Despite the officer's subsequent, repeated instructions and demonstrations on how Yarber should blow into the (designated) tube, Yarber continued to suck air into her body. Consequently, the results of the Intoxilizer 5000 testing read "insufficient sample," which the officer explained, "mean[t] that she did not blow, provide a breath sample."

Yarber neither testified, nor called any witness.

In her sole claim of error on appeal, Yarber complains that the jury was allowed to hear a recording of the 911 call placed at the collision scene by the driver of the other vehicle. The recording captured the driver reporting to the 911 operator, "I just got hit," then providing the intersection of the collision. The operator asked him to repeat his location, and he did, adding, "This lady just ran into my car." The operator

asked for the color and make of the vehicles involved. Although the driver began describing one of the vehicles, he soon paused. When he spoke again, he said, "Oh, here's the cop right here." Afterward, the driver's voice can be heard as part of the background of the call: ". . . then ran into me . . . tapped me . . . pulled right in front of me . . . bumped me." When the call abruptly disconnected, about a minute had lapsed from the driver's initial report to the 911 operator that "I just got hit."

As the record reveals, Yarber sought a pretrial ruling to exclude the recording, objecting that the driver's statements were "testimonial in nature," and that, because the state had acknowledged that it would not be calling the driver to the stand, his recorded statements would violate her right to confront the driver.[5] The trial court overruled Yarber's objection, noting that "it was a phone call made at the time of the

---

[5] The Confrontation Clause of the Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." "The confrontation clause imposes an absolute bar to admitting out-of-court statements in evidence when they are testimonial in nature, and when the defendant does not have an opportunity to cross-examine the declarant." *Gay v. State*, 279 Ga. 180, 181-182 (2) (611 SE2d 31) (2005), citing *Crawford v. Washington*, 541 U. S. 36, 40 (124 SCt 1354, 158 LE2d 177) (2004); *Billings v. State*, 293 Ga. 99, 103 (4) (745 SE2d 583) (2013) ("The admission of an out-of-court statement into evidence at a criminal trial comes within the scope of the Confrontation Clause only if the statement was 'testimonial.'") (citations omitted).

incident . . . to report the incident,"[6] and adopting the state's position that the recorded statements were admissible as the driver's "present sense impression[s]."[7]

According to Yarber, the trial court erred by allowing the state to present to the jury

> [the other driver's] "conclusions" and "impression" of how the accident took place without subjecting him to cross-examination by the Defense. Said 911 audio recording was the only evidence of any less safe act of the Defendant. [cit.] This Court should reverse the trial court and rule that, under this set of facts, the 911 tape of [the driver] is inadmissible.

---

[6] See *Davis v. Washington*, 547 U. S. 813, 822 (II) (126 S. Ct. 2266, 165 LEd2d 224) (2006) ("Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an *ongoing* emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to *establish or prove past events* potentially relevant to later criminal prosecution.") (footnote omitted; emphasis supplied).

[7] See *Thomas v. State*, 284 Ga. 540, 543-544 (2) (668 SE2d 711) (2008) ("Once a determination is made that a statement is nontestimonial in nature, normal rules regarding the admission of hearsay apply.") (citation and punctuation omitted); see also OCGA § 24-8-803 (1) ("The following shall not be excluded by the hearsay rule, even though the declarant is available as a witness: . . . *Present sense impression.* A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter.") (emphasis in original).

Here, even assuming arguendo that the recording should have been excluded under *Crawford v. Washington*[8] and its progeny,[9] the requisite harm did not result.[10]

---

[8] Supra.

[9] See, e.g., footnotes 5 and 6, supra; see further, e.g., *Davis*, supra at 823 (III) (A), n. 2 ("If 911 operators are not themselves law enforcement officers, they may at least be agents of law enforcement when they conduct interrogations of 911 callers."); *Pitts v. State*, 280 Ga. 288-290 (627 SE2d 17) (2006) (holding that "the determination of whether the recording of a 911 phone call is testimonial should be made on a case-by-case basis," and noting that a 911 recording was nontestimonial "where the call was made while the crime was in progress, by a panicked caller whose primary purpose was to seek assistance to prevent the completion of an ongoing crime"); see also *Brown v. State*, 288 Ga. 404, 408 (3) (703 SE2d 624) (2010) (explaining that where the victim's statement of "past events was delivered *at some remove in time from the danger she described* and was not providing information enabling officers immediately to end a threatening situation," the statement was testimonial in nature) (emphasis supplied); *Wright v. State,* 285 Ga. 57, 60 (3) (a) (673 SE2d 249) (2009) (reasoning that "statements [made] in response to a question by law enforcement after the emergency had already ended and were reflective of past events . . . were testimonial in nature") (citations omitted). Cf. *Owens v. State*, 329 Ga. App. 455-458 (1) (a) (765 SE2d 653) (2014) (determining that the victim's calls to 911 concerning a domestic dispute were nontestimonial, where the first call was made while the victim was still in the house with the defendant and the second call was made after the victim had fled the house, but remained in the residential area and thus fearful that the defendant would "start looking for" him, and where trial court redacted portions of call arguably involving victim's narration of past events).

[10] See generally *Hatley*, supra at 485 (II) (resolving whether any error was harmless beyond a reasonable doubt, while declining to determine whether out-of-court statements were testimonial or non-testimonial, where the out-of-court statements could not be "categorized easily [as testimonial or non-testimonial] because the moment when police neutralized any threat to the public [was] unclear").

An error of constitutional magnitude can be harmless when "the evidence at issue is cumulative of other properly-admitted evidence or when the evidence against the defendant is overwhelming."[11]

Yarber challenges her DUI (less safe) conviction on the ground that the recording supplied the only evidence of an essential element – a "less safe act," but her argument misconstrues Georgia law. "[C]ommission of an unsafe act is not an element of that crime. Therefore, it was not incumbent upon the state to prove that [Yarber] committed an unsafe act while [s]he was behind the wheel."[12]

Moreover, even without the 911 recording, there was overwhelming evidence that Yarber was guilty of DUI (less safe). Through the testimony of the officers, the state showed that within moments of the collision, Yarber admitted that she had just left a club, that she had recently consumed alcoholic beverages, and that she had been the driver of her vehicle when it collided with another one. The results of the Alco-

---

[11] *Brown*, supra (citation omitted); see *Hatley*, supra at 484 (II) ("[W]hen hearsay evidence is erroneously admitted in violation of the Confrontation Clause, the error can be deemed harmless beyond a reasonable doubt where the hearsay is cumulative of other admissible evidence."); *Vaughn v. State*, 248 Ga. 127, 131-132 (2) (281 SE2d 594) (1981) ("Overwhelming evidence of the defendant's guilt can negate the possibility that the constitutional error contributed to the conviction.") (citation omitted).

[12] *Brent v. State*, 270 Ga. 160, 161 (1) (510 SE2d 14) (1998) (citations omitted).

Sensor test showed that Yarber had consumed alcohol, and the odor of alcoholic beverage emitting from her breath was strong. Yarber's eyes were watery and bloodshot. Her speech was slurred and mumbled. And at times, she was incoherent. She was "slow to respond" to a rudimentary request by police for her driver's license. She was unable to convey whether she understood the instructions for the HGN test. She failed to follow preliminary instructions in connection with the walk and turn test. During her roadside encounter with police, her body "swayed," and she twice stumbled, nearly falling to the ground. And when the officer thereafter attempted to chemically test Yarber's breath, she either could not or would not comply with repeated instructions and demonstrations so as to provide a sufficient breath sample. Given the foregoing, there was overwhelming evidence that Yarber had committed DUI (less safe).[13]

Turning to the traffic infractions, we reach a similar conclusion. Even without the 911 recording, there was overwhelming evidence that Yarber was guilty of failure

---

[13] See *Morgan v. State*, 181 Ga. App. 150, 151 (351 SE2d 497) (1986) (determining that the evidence of DUI less safe conviction was overwhelming, where, despite lack of evidence of field sobriety tests, defendant had crashed his vehicle, fallen down while exiting his car, had a strong odor of alcohol on him, could not stand alone, had bloodshot eyes, and exhibited speech so slurred he could hardly be understood).

to maintain lane and improper turn at an intersection. Through the testimony of the officers, the state showed that police found Yarber in the driver's seat of her vehicle, with its engine still running, and the vehicle positioned "directly in front of the second vehicle involved." When Yarber was asked by an investigating officer what had happened in the apparent collision, she described only *her* maneuver of making a right turn from one street onto another. Indeed, the officer with a background in investigating car accidents testified and illustrated that Yarber had been attempting to make a right turn when she "turned wide" and into the path of the second vehicle that was waiting to turn left. And as explained above, the state adduced overwhelming evidence that at the time Yarber's vehicle collided with the other, she was under the influence of alcohol to the extent that it was less safe for her to drive.[14]

Because Yarber's claim that the "911 audio recording was the only evidence of any less safe act" is unavailing, because the driver's statements to the 911 operator were cumulative of other admissible evidence, and because the evidence adduced – excluding the other driver's statements to the 911 operator – as to all charges against

---

[14] See generally *Dunn v. State*, 291 Ga. 551, 552 (2) (732 SE2d 524) (2012) (determining that the evidence was overwhelming, based upon the evidence collected at the scene of the crime and defendant's own admission).

12

her was overwhelming, any error in admitting the recording was harmless beyond a reasonable doubt.[15]

*Judgment affirmed. Dillard and Peterson, JJ., concur.*

---

[15] See *Hatley*, supra at 485 (II) (explaining that any error in admitting the out-of-court statements was harmless beyond a reasonable doubt, given the cumulative nature of the contested statements and the remaining overwhelming evidence); see also *Bell v. State*, 294 Ga. 443, 448 (3) (754 SE2d 327) (2014) ("Even though [out-of-court] statements to the officer were testimonial in nature and thus were subject to exclusion pursuant to the Confrontation Clause protections set forth in *Crawford*[, supra,] admission of this testimony was harmless beyond a reasonable doubt because it was cumulative of other admissible evidence."); *Brown*, supra (determining that the admission of hearsay admitted in violation of *Crawford*, supra, was harmless error because the hearsay was cumulative of other evidence, namely the testimony of officers who had responded to emergency calls for assistance).