**FOURTH DIVISION**
**RICKMAN, C. J.,**
**DILLARD, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

**May 23, 2023**

# In the Court of Appeals of Georgia

A23A0357. RIJAL v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Durlav Rijal on one count of driving under the influence of alcohol to the extent that he was a less-safe driver (DUI less-safe)[1] and one count of improperly passing an emergency vehicle in violation of the Spencer Pass Law (a "move-over" violation).[2] On appeal, Rijal contends (1) the traffic stop of his vehicle was unjustified because the evidence fails to show he violated the move-over statute; (2) the trial court erred in admitting his refusal to take a portable breath test; and (3) the trial court erred in denying his claims of ineffective assistance of counsel. For the following reasons, we disagree and affirm.

---

[1] *See* OCGA § 40-6-391 (a) (1).

[2] *See* OCGA § 40-6-16 (a), (b).

Viewed in the light most favorable to the jury's verdict,[3] the record shows that around 2:00 a.m. on September 29, 2018, a deputy with the Forsyth County Sheriff's Office came upon a motorist who had pulled over into the right emergency lane on Georgia Highway 400 and appeared to need assistance. Consequently, the deputy drove up behind the motorist and illuminated his own vehicle's rear-facing blue lights. Then, after assisting the motorist, the deputy returned to his vehicle to complete some paperwork. As he finished doing so, he observed—in his rear-view mirror—another vehicle approaching quickly in the far right lane. And as the deputy's vehicle began to inch forward to merge back onto the highway, the approaching vehicle stayed in the far right lane, making no attempt to move over despite the deputy's rear-facing blue lights being illuminated and no other traffic prevented him from doing so.

Believing that the passing vehicle had just committed a traffic violation by failing to move over from the right lane when approaching his vehicle, the deputy followed, and a few minutes later, he initiated a traffic stop. Then, after the vehicle pulled over, the deputy approached it, and when the driver lowered his window, the deputy immediately smelled an alcoholic-beverage odor. At that point, the deputy

_____

[3] *See, e.g.*, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018).

2

noticed two occupants, and so he asked the driver—now identified by his license as Rijal—to exit the vehicle. Rijal complied, and after exiting his vehicle, the deputy still smelled an alcoholic-beverage odor. The deputy then asked Rijal if he had recently consumed any alcoholic beverages, and Rijal replied that he had one beer at around 10:00 p.m. But noticing that Rijal's eyes were bloodshot and his speech was slurred, the deputy had him perform several field-sobriety tests. And when those tests indicated impairment, the deputy asked Rijal to take a portable breath test, but he refused to do so. The deputy then placed Rijal under arrest for DUI less-safe.

Subsequently, the State charged Rijal, via accusation, with one count each of DUI less-safe, improperly passing an emergency vehicle, and driving too fast for conditions.[4] The case ultimately proceeded to trial, in which the State presented the foregoing evidence, and Rijal proffered the testimony of an expert witness (a former police officer), who challenged the validity of several of the field-sobriety tests the deputy conducted during the traffic stop. But at the conclusion of the trial, the jury found Rijal guilty on the charges of DUI-less safe and improperly passing an emergency vehicle.

---

[4] It is unclear from the record whether the driving-too-fast-for-conditions charge was dismissed or *nolle prossed*, but Rijal was ultimately not tried on that charge.

Rijal later obtained new counsel and filed a motion for new trial, arguing, *inter alia*, that his trial counsel rendered ineffective assistance. The trial court held a hearing on Rijal's motion, during which his trial counsel testified regarding the representation. After both parties presented their respective arguments, the trial court denied Rijal's motion and later issued an order to that effect. This appeal follows.

1. Rijal contends the traffic stop of his vehicle was unjustified under the Fourth Amendment to the United States Constitution[5] because the evidence failed to show he committed a traffic violation under the plain language of the move-over statute. We disagree.

But first, we need to briefly address Rijal's curious phrasing of this enumeration of error. Specifically, he couches his argument as if the trial court denied a motion to suppress evidence obtained as a result of the traffic stop—even citing to case authority outlining the standard of review of a trial court's order concerning such

---

[5] *See* U.S. CONST. amend IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."); GA. CONST. Art. I, § I, ¶ XIII ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the persons or things to be seized.").

4

a motion.[6] But Rijal never filed a motion to suppress, and he does not mention his trial counsel's failure to do so as one of the instances of ineffective assistance. Rather, Rijal essentially argues he did not violate the move-over statute as a matter of law. Nevertheless, this claim must be reviewed under the plain-error standard.[7] In this regard, the Supreme Court of Georgia has held that plain-error review consists of the following four prongs:

> First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the

---

[6] *See Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015) (explaining that an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court when reviewing a trial court's order on a motion to suppress); *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994) (holding that when the evidence pertaining to a motion to suppress is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review).

[7] *See* OCGA § 24-1-103 (d) ("Nothing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court."). In its response brief, the State construes Rijal's argument as a challenge to the sufficiency of the evidence supporting his move-over conviction. And given Rijal's focus on the statute's application to the largely uncontradicted facts, the State's assessment is not unreasonable. Even so, we construe Rijal's contention as a threshold challenge to the admission of all the evidence against him (particularly the evidence supporting the more serious DUI less-safe conviction), and focus our analysis accordingly.

5

error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[8]

Importantly, satisfying all four prongs of this standard is difficult, "as it should be."[9] Needless to say, we are not required to analyze "all elements of the plain-error test [when] an appellant fails to establish one of them."[10]

Turning to Rijal's specific claim, he contends the uncontradicted evidence shows he did not violate the plain text of the move-over statute. Our analysis, of course, begins with "familiar and binding canons of construction."[11] And in considering the meaning of a statute, our charge is to "presume that the General

---

[8] *Williams v. State*, 315 Ga. 490, 495 (2) (883 SE2d 733) (2023) (punctuation omitted); *accord Stanbury v. State*, 299 Ga. 125, 129 (2) (786 SE2d 672) (2016).

[9] *Williams*, 315 Ga. at 495 (2) (punctuation omitted); *accord Hood v. State*, 303 Ga. 420, 426 (2) (a) (811 SE2d 392) (2018).

[10] *Williams*, 315 Ga. at 496 (2) (punctuation omitted); *accord Payne v. State*, 314 Ga. 322, 325 (1) (877 SE2d 202) (2022).

[11] *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687 (2014).

Assembly meant what it said and said what it meant."[12] So, we must afford the statutory text its plain and ordinary meaning,[13] consider the text contextually,[14] read the text "in its most natural and reasonable way, as an ordinary speaker of the English language would,"[15] and seek to "avoid a construction that makes some language mere surplusage."[16] Needless to say, when the language of a statute is plain and susceptible of only one natural and reasonable construction, "courts must construe the statute accordingly."[17]

---

[12] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation & punctuation omitted); *accord Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013).

[13] *Deal*, 294 Ga. at 172 (1) (a); *see Singletary v. State*, 310 Ga. App. 570, 572 (713 SE2d 698) (2011) ("In construing these statutes, we apply the fundamental rules of statutory construction that require us to construe the statutes according to their terms, [and] to give words their plain and ordinary meaning[.]" (citation & punctuation omitted)).

[14] *See Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *Martinez*, 325 Ga. App. at 273 (2) (same); *see also* OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words . . . .").

[15] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Martinez*, 325 Ga. App. at 273 (2).

[16] *Ga. Transmission Corp. v. Worley*, 312 Ga. App. 855, 856 (720 SE2d 305) (2011); *accord Singletary*, 310 Ga. App. at 572.

[17] *Martinez*, 325 Ga. App. at 273 (2) (punctuation omitted); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the

7

Bearing these guiding principles in mind, OCGA § 40-6-16 (b) provides as follows:

> The operator of a motor vehicle approaching a stationary authorized emergency vehicle that is displaying flashing yellow, amber, white, red, or blue lights shall approach the authorized emergency vehicle with due caution and shall, absent any other direction by a peace officer, proceed as follows:
>
> (1) Make a lane change into a lane not adjacent to the authorized emergency vehicle if possible in the existing safety and traffic conditions; or
>
> (2) If a lane change under paragraph (1) of this subsection would be impossible, prohibited by law, or unsafe, reduce the speed of the motor vehicle to a reasonable and proper speed for the existing road and traffic conditions, which speed shall be less than the posted speed limit, and be prepared to stop.

Here, the evidence shows the deputy parked behind a motorist in need of assistance in the far right emergency lane of Georgia 400 and illuminated his patrol vehicle's rear-facing blue lights. And while still parked, he observed in his rear-view mirror Rijal's vehicle approaching in the right lane. But despite the patrol vehicle's blue

statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

lights and the lack of other vehicles which might have made a lane change unsafe, Rijal never moved over but, rather, continued driving in the far right lane (adjacent to the emergency lane), eventually passing the deputy's patrol vehicle as it started to move forward in an effort to merge back onto the highway. Given these circumstances, the deputy's traffic stop of Rijal's vehicle was justified by his reasonable belief that Rijal violated the move-over statute.[18]

Nevertheless, focusing on the language in OCGA § 40-6-16 (b) requiring a motorist to move over when "approaching a *stationary* authorized emergency vehicle . . .[,]"[19] Rijal claims the video from the patrol vehicle's dash-cam shows that it was inching forward when Rijal's vehicle passes. He then argues that because the uncontradicted evidence shows he passed a moving emergency vehicle rather than a stationary one, he did not violate the plain language of OCGA § 40-6-16 (b), and

---

[18] *See Pierce v. State*, 322 Ga. App. 145, 147 (2) (743 SE2d 438) (2013) (holding that evidence the motorist passed officer in lane adjacent to officer while he concluded traffic stop and had his blue emergency lights activated was sufficient to support conviction for improperly passing an emergency vehicle); *Van Auken v. State*, 304 Ga. App. 802, 806 (697 SE2d 895) (2010) (explaining that evidence police officer's vehicle was stationary on an extended straightaway with its lights activated as defendant approached in the right lane and only moved over as officer slowly moved his car into the right hand lane of traffic sufficiently supported defendant's conviction for improperly passing an emergency vehicle).

[19] (Emphasis supplied).

9

thus, the deputy's subsequent traffic stop was unlawful. Rijal further contends that

*Van Auken v. State*[20]—which he asserts held that passing a moving emergency vehicle

nonetheless violated the move-over statute—ignored the plain language of the statute

and should be overruled. We find these arguments unpersuasive.

Rijal is correct that the plain language of OCGA § 40-6-16 (b) is controlling

in this case. But in his zeal to call attention to the word "stationary,"[21] he ignores the

preceding word "approaching."[22] Significantly, although the plain language of the

statute does not criminalize "passing" a "moving" emergency vehicle, it *does*

criminalize "approaching a stationary" emergency vehicle without making a safe

effort to "[m]ake a lane change into a lane not adjacent"[23] to that vehicle. Indeed,

contrary to Rijal's contention, the latter conduct is what we held constituted a

---

[20] 304 Ga. App. 802 (697 SE2d 895) (2010).

[21] *See* The Compact Oxford English Dictionary 1890 (2d ed. 1991) (defining "stationary" as, *inter alia*, "having a fixed station or place . . . standing still; not moving").

[22] *See* The Compact Oxford English Dictionary 65 (2d ed. 1991) (defining "approaching" as, *inter alia*, "drawing near in space, time, or circumstance").

[23] *See* OCGA § 40-6-16 (b) (1).

10

violation of the move-over statute in *Van Auken*;[24] and, as the evidence here demonstrated, Rijal's act in approaching the deputy's then-*stationary* vehicle while its blue lights were illuminated without moving over was similarly what justified the traffic stop, regardless of whether the deputy's vehicle was moving when Rijal passed it. As a result, the trial court did not err—much less plainly err—in admitting evidence obtained as a result of the deputy's traffic stop.[25]

2. Rijal also argues the trial court erred in admitting the deputy's testimony that Rijal refused to take the portable breath test. Again, we disagree.

After Rijal admitted to drinking a beer earlier that evening, the deputy had him perform several field-sobriety tests, and then asked him if he would submit to a portable breath test. Rijal declined, and during trial, the deputy testified without objection about this refusal. In his motion for new trial and now on appeal, Rijal contends the deputy's testimony violated his right against compelled self-

---

[24] *See Van Auken*, 304 Ga. App. at 806 ("Based upon the testimony of the sergeant and the video recording, the jury was entitled to find that [defendant], *approaching* in the right traffic lane, would have been able to see the patrol car with flashing blue lights activated while it was still stationary on the right shoulder of the highway." (emphasis supplied)).

[25] *See supra* note 18 & accompanying text.

11

incrimination under the Georgia Constitution.[26] And in *Olevik v. State*,[27] the Supreme Court of Georgia held "that—unlike the Fifth Amendment—the Georgia Constitution's right against compelled self-incrimination prevents the State from forcing someone to submit to a chemical breath test."[28] Importantly, at the time this matter was tried (November 18, 2019), the Supreme Court of Georgia—in *Elliott v. State*[29]—had recently further held that Article 1, Section 1, Paragraph XVI of the Georgia Constitution also "precludes admission of evidence that a suspect refused to consent to a breath test."[30] Both of these cases involved post-arrest chemical breathalyzer tests, rather than the portable breath test conducted roadside at issue

---

[26] *See* GA. CONST. Art. 1, § 1, ¶ XVI ("No person shall be compelled to give testimony tending in any manner to be self-incriminating.").

[27] 302 Ga. 228 (806 SE2d 505) (2017).

[28] *Elliott v. State*, 305 Ga. 179, 180 (824 SE2d 265) (2019); *see Olevik*, 302 Ga. at 252 (3) (b) (holding Article 1, Section 1, Paragraph XVI of the Georgia Constitution protects against compelled breath tests and affords individuals a constitutional right to refuse testing); *see also* GA. CONST. Art. 1, § 1, ¶ XVI ("No person shall be compelled to give testimony tending in any manner to be self-incriminating.").

[29] 305 Ga. 179 (824 SE2d 265) (2019).

[30] *Id*. at 223 (IV) (E).

here.[31] But nearly one year after Rijal's conviction (and prior to the hearing on his motion for new trial), this Court extended the holding in *Elliott*, concluding in *State v. Bradberry*[32] that admission of a defendant's refusal to submit to a preliminary breath test at the scene of an automobile accident similarly violated a defendant's right under Article 1, Section 1, Paragraph XVI of the Georgia Constitution to protection against self-incrimination.[33]

Rijal now asserts he is entitled to benefit from our Court's holding in *Bradberry* even though that decision was issued *after* his trial. It is, of course, true that under the so-called "pipeline" rule, Georgia appellate courts will "apply a new rule of criminal procedure to all cases then on direct review or not yet final."[34] But the

_____

[31] *See id.* at 181 (I) (explaining that defendant refused post-arrest state-administered breath test); *Olevik*, 302 Ga. at 229 (noting the central issue involved defendant's appeal of the denial of his motion to suppress results of state-administered breath test).

[32] 357 Ga. App. 60 (849 SE2d 790) (2020).

[33] *See id.* at 66 (3) (holding that defendant had the right to refuse to provide incriminating evidence by performing such an affirmative act as an alco-sensor breath test under Article 1, Section 1, Paragraph XVI of the Georgia Constitution, and thus, admission of evidence of his refusal violated the state constitutional right against self-incrimination).

[34] *State v. Herrera-Bustamante*, 304 Ga. 259, 262-63 (2) (a) (818 SE2d 552) (2018) (punctuation omitted); *accord Taylor v. State*, 262 Ga. 584, 586 (3) (422 SE2d

pipeline rule does not "alter the general rule that objections to the admission of evidence must be raised in a timely fashion at trial for the objection to be preserved for ordinary appellate review."[35] And during trial, Rijal did not object to the deputy's testimony regarding his refusal to take the portable breath test. Consequently, as with Rijal's first enumeration of error, our review of this contention is again limited to whether admission of the deputy's testimony constituted plain error.[36]

In that regard, an error is plain if it is "clear or obvious under current law[, and] [a]n error cannot be plain [when] there is no controlling authority on point."[37] Importantly, the "current law" considered is "the law at the time of appellate review rather than at trial, but an error is not plain under 'current law' if a defendant's theory requires the extension of precedent."[38] And here, Rijal's claim of error requires no

---

430) (1992).

[35] *Herrera-Bustamante*, 304 Ga. at 263 (2) (a); *see State v. Williams*, 308 Ga. 228, 231 (1) (838 SE2d 764) (2020) (explaining that despite pipeline rule, failure to object to admission of evidence results in plain error review on appeal).

[36] *See supra* notes 7-10 & accompanying text.

[37] *Herrera-Bustamante*, 304 Ga. at 264 (2) (b) (punctuation omitted); *accord Simmons v. State*, 299 Ga. 370, 374 (788 SE2d 494) (2016).

[38] *Herrera-Bustamante*, 304 Ga. at 264 (2) (b) (punctuation & citation omitted); *see Lyman v. State*, 301 Ga. 312, 317 (2) (800 SE2d 333) (2017) (explaining that when conducting review of asserted plain error, whether an error is clear or obvious

14

such extension of precedent, as *Bradberry* is directly on point. So, in light of *Bradberry*, the deputy's testimony that Rijal refused to submit to the portable breath test violated his right against self-incrimination.[39] But that does not end our inquiry.

An error of constitutional dimension is harmless only if "it can be determined beyond a reasonable doubt that it did not contribute to the jury's guilty verdict."[40] Nonetheless, even an error of constitutional magnitude can be harmless when, as here, "the evidence against the defendant is overwhelming."[41] And in this matter, the evidence shows that when Rijal was pulled over, the deputy immediately smelled an alcoholic-beverage odor, which persisted when Rijal exited his vehicle; Rijal admitted to drinking earlier in the evening; his eyes were bloodshot; his speech was slurred; and his performance on the field-sobriety tests indicated impairment. Given these circumstances, the evidence that Rijal was a less-safe driver was overwhelming,

---

is judged at the time of the appellate court's review).

[39] *See supra* note 33 & accompanying text.

[40] *Stoica v. State*, 339 Ga. App. 486, 489 (3) (793 SE2d 651) (2016) (punctuation omitted); *see Porter v. State*, 364 Ga. App. 465, 468 (2) (875 SE2d 486) (2022) ("A conviction will be affirmed despite a constitutional error if the error is harmless beyond a reasonable doubt." (punctuation omitted)).

[41] *Stoica*, 339 Ga. App. at 489 (3) (punctuation omitted); *accord Yarber v. State*, 337 Ga. App. 40, 44-45 (785 SE2d 677) (2016).

regardless of his refusal to submit to the portable breath test; and as a result, the erroneous admission of that refusal was harmless.[42]

3. Rijal further maintains the trial court erred in denying his claims that his counsel rendered ineffective assistance by failing to object to the deputy's testimony regarding Rijal's refusal to submit to the portable breath test and failing to object to the admission of the deputy's training credentials. Yet again, we disagree.

To evaluate Rijal's claims of ineffective assistance of counsel, we apply the familiar two-pronged test established in *Strickland v. Washington*,[43] which requires him to show that his trial counsel's performance was "deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for

---

[42] *See Stoica*, 339 Ga. App. at 489 (3) (holding evidence supporting DUI less-safe conviction was overwhelming given testimony about defendant's erratic driving, the odor of alcohol from his person, his slurred speech and bloodshot eyes, his unsteadiness, his inability to comply with the field sobriety tests, his admission to drinking, and the open container of a liquid that smelled like alcohol in his car and, thus, erroneous admission of blood test was not reversible error); *Yarber*, 337 Ga. App. at 45 (explaining evidence violating defendant's confrontation-clause right was harmless in light of fact that defendant's involvement in collision, slurred speech, bloodshot eyes, smell of alcoholic beverage emanating from her, and her admission to having some drinks amounted to overwhelming evidence supporting her conviction for DUI less-safe).

[43] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

16

counsel's errors, the outcome of the trial would have been different."[44] Importantly, should a defendant "fail to meet his burden on one prong of this two-prong test, we need not review the other prong."[45] In addition, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[46] In fact, the reasonableness of counsel's conduct is "examined from counsel's perspective at the time of trial and under the particular circumstances of the case[.]"[47] And decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if "they were so patently unreasonable that no competent attorney would have followed such a course."[48] Moreover, unless clearly erroneous, this Court will

---

[44] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland*, 466 U.S. at 687 (III); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

[45] *McAllister v. State*, 351 Ga. App. 76, 93 (6) (830 SE2d 443) (2019); *accord Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017).

[46] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[47] *Lockhart v. State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016).

[48] *Id.*

"uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[49] With these guiding principles in mind, we turn now to Rijal's specific claims of error.

(a) Rijal first argues his trial counsel rendered ineffective assistance by failing to object to the deputy's testimony regarding his refusal to submit to the portable breath test. But as discussed *supra*, our decision in *Bradberry* was not issued until nearly a year after Rijal's conviction. And the pipeline rule notwithstanding, "[i]t is well settled that the standard for effectiveness of counsel does not require a lawyer to anticipate changes in the law or pursue novel theories of defense."[50] Indeed, a criminal defense attorney "does not perform deficiently when he fails to advance a

---

[49] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014); *accord Johnson v. State*, 361 Ga. App. 43, 54 (4) (861 SE2d 660) (2021); *see Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014) (holding that "[i]n reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo").

[50] *Vivian v. State*, 312 Ga. 268, 274 (2) (c) (862 SE2d 138) (2021) (punctuation omitted); *accord Brooks v. State*, 309 Ga. 630, 637 (2) (847 SE2d 555) (2020); *see Kim v. State*, 366 Ga. App. 516, 520 (2) (883 SE2d 536) (2023) (holding that trial counsel's failure to raise novel legal arguments does not amount to ineffective assistance of counsel).

legal theory that would require an extension of existing precedents and the adoption of an unproven theory of law."[51] Furthermore, given our holding in Division 2 *supra*, that the evidence supporting his DUI less-safe conviction was overwhelming, even if counsel's failure to object to the deputy's testimony about Rijal's refusal could be construed as deficient performance, Rijal has not established that "any such deficiency resulted in prejudice, as the test for prejudice in the ineffective assistance analysis is equivalent to the test for harm in plain error review[,]"[52] and we found no plain error. Accordingly, this claim of ineffective assistance of counsel lacks merit.

(b) Rijal also claims his counsel rendered ineffective assistance by failing to object to the admission of the deputy's training credentials into evidence. Specifically, near the beginning of the State's direct examination, the deputy testified regarding his experience in law enforcement and the certificates he had previously obtained for completing various law enforcement training courses, including a drug

---

[51] *Esprit v. State*, 305 Ga. 429, 438 (2) (c) (826 SE2d 7) (2019) (punctuation omitted).

[52] *Knighton v. State*, 310 Ga. 586, 597 (2) (c) (853 SE2d 89) (2020) (punctuation omitted); *accord Roberts v. State*, 305 Ga. 257, 265 (5) (a) (824 SE2d 326) (2019); *see Williams v. State*, 304 Ga. 455, 460 (3) n.4 (818 SE2d 653) (2018) (explaining that the test for harm under plain-error review is equivalent to the test in ineffective assistance of counsel cases for whether an attorney's allegedly deficient performance has resulted in prejudice of constitutional proportions).

recognition expert ("DRE") certification. Rijal's trial counsel lodged no objection at that time or when the certifications—which had been admitted as exhibits—were allowed to go out with the jury during its deliberations. And at the hearing on the motion for new trial, his trial counsel testified that he did not object to the certificates because they are routinely admitted, and he did not want to draw attention to them by being overruled.

Nevertheless, Rijal argues his trial counsel's failure to object to the deputy's testimony about his certifications and the certificates themselves—particularly the DRE certificate—constituted deficient performance because that evidence improperly bolstered the deputy's credibility, was irrelevant, and was scientifically unreliable. He also contends the certificates going out with the jury violated the continuing-witness rule. None of these arguments have merit.

(i) To be sure, Rijal is correct that "a witness, even an expert, can never bolster the credibility of another witness as to whether the witness is telling the truth."[53] But here, Rijal is arguing the deputy's testimony about *his own* experience and training, and the certificates documenting that training, amount to bolstering the deputy's own

---

[53] *Alvarado v. State*, 365 Ga. App. 305, 308-09 (2) (a) (878 SE2d 266) (2022) (punctuation omitted); *accord Handley v. State*, 289 Ga. 786, 787-88 (2) (a) (716 SE2d 176) (2011).

credibility. And even if we agreed that it could be so construed, "we know of no legal reason why a witness should be prohibited on direct examination from asserting his or her own credibility by testifying that he or she is telling the truth and giving some explanation."[54] Significantly, when a witness's statement "does not directly address the credibility of another witness, there is no improper bolstering."[55] Consequently, a bolstering objection here "would have been without merit, and failure to make a meritless objection cannot be evidence of ineffective assistance."[56]

(ii) Next, Rijal argues that his trial counsel should have objected to the deputy's testimony about his training as a DRE, which according to the deputy entailed being trained to recognize when a suspect is on drugs and what kind of drug they have taken. Specifically, Rijal asserts that this evidence was irrelevant and not admissible

---

[54] *Alvarado*, 365 Ga. App. at 309 (2) (a) (punctuation omitted); *accord Thomas v. State*, 318 Ga. App. 849, 856 (4) (c) (734 SE2d 823) (2012); *see Handley*, 289 Ga. at 788 (2) (a) (questioning whether a witness can be prohibited on direct examination from asserting his own credibility by testifying that he is telling the truth and giving some explanation).

[55] *Hardin v. State*, 344 Ga. App. 378, 382 (1) (a) (810 SE2d 602) (2018); *see Jones v. State*, 299 Ga. 40, 43 (3) (785 SE2d 886) (2016) (explaining it is not impermissible to ask a witness about their own credibility but it is improper to ask a witness to testify as to the veracity of another witness).

[56] *Hardin*, 344 Ga. App. at 382 (1) (a) (punctuation omitted); *accord Leggett v. State*, 331 Ga. App. 343, 348 (5) (a) (771 SE2d 50) (2015).

21

under *Harper v. State*,[57] in which the Supreme Court of Georgia explained that before evidence based on a scientific principle or technique can be admitted, the party offering it must demonstrate with verifiable certainty that the tests or techniques are valid and capable of producing reliable results.[58] Nonetheless, other than this brief mention near the beginning of the deputy's testimony, he never discussed his DRE training and certification again, and Rijal is unable to cite to any part of the record when the scientific reliability, or lack thereof, of the deputy's DRE training became

[57] 249 Ga. 519 (292 SE2d 389) (1982), *superseded by statute as stated in Smith v. State*, 315 Ga. 287, 300 (2) (b) n.6 (882 SE2d 300) (2022); *see* 2022 Ga. L., p. 201, § 1 (amending OCGA § 24-7-702).

[58] *See Harper*, 249 Ga. at 526 (1) (holding that once a scientific procedure has been recognized in a substantial number of courts, a trial judge may judicially notice, without receiving evidence, that the procedure has been established with verifiable certainty). The General Assembly recently amended the Evidence Code to extend to criminal cases the federal standard of admissibility of expert testimony articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (113 SCt 2786, 125 LE2d 469) (1993), and its progeny. *See* 2022 Ga. Laws, p. 201, § 1 (amending OCGA § 24-7-702). Under that standard, a trial court must evaluate the reliability of the expert's proffered testimony; proper considerations include 'whether a theory or technique can be tested, whether it has been subjected to peer review and publication, the known or potential rate of error for the theory or technique, the general degree of acceptance in the relevant scientific or professional community, and the expert's range of experience and training.'" *Smith v. State*, 315 Ga. 287, 300 (2) (a) n.6 (882 SE2d 300) (2022) (*quoting HNTB Georgia, Inc. v. Hamilton-King*, 287 Ga. 641, 642 (1) (697 SE2d 770) (2010)). Thus, the *Harper* standard does not apply to cases tried after July 1, 2022. *See* 2022 Ga. Laws, p. 201, 202 § 3.

22

a focus of any witness testimony. In fact, the only time DRE certification *was* mentioned again was when Rijal's expert witness mentioned that he also was DRE certified. Given these circumstances, trial counsel's decision to refrain from objecting to this testimony in order to avoid unwarranted attention to it was a perfectly reasonable trial strategy.[59]

(iii) Finally, Rijal asserts his trial counsel performed deficiently by failing to lodge a continuing-witness-rule objection when the deputy's training certificates were allowed to go out with the jury during their deliberations. In Georgia,

> the continuing witness objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once.[60]

---

[59] *See Roberts v. State*, 344 Ga. App. 324, 336 (4) (a) (810 SE2d 169) (2018) (finding that trial counsel's decision to not object to improper hearsay testimony so as to avoid drawing undue attention to it was reasonable strategy); *Kay v. State*, 306 Ga. App. 666, 671-72 (5) (c) (703 SE2d 108) (2010) (holding that tactical decision not to object to statement in order to avoid drawing jury's attention to it did not amount to ineffective assistance of counsel).

[60] *Rainwater v. State*, 300 Ga. 800, 803 (2) (797 SE2d 889) (2017) (punctuation omitted); *accord Davis v. State*, 285 Ga. 343, 348 (8) (676 SE2d 215) (2009).

Importantly, the types of documents that "have been held subject to the rule include affidavits, depositions, written confessions, statements, and dying declarations."[61] But Rijal is unable to cite any case authority to support his argument that documentary evidence of a training certificate is the type of testimonial account of a witness the continuing-witness objection prohibits. To the contrary, documents similar to the deputy's training certificates are considered merely documentary evidence of an event itself (*i.e.*, *prima facie* evidence of completing the training), as opposed to written testimonial accounts of witnesses, which do violate the continuing witness rule.[62] As a result, any continuing-witness objection to the deputy's training certificates would

---

[61] *Rainwater*, 300 Ga. at 803 (2) (punctuation omitted); *accord Davis*, 285 Ga. at 348 (8).

[62] *See Dockery v. State*, 287 Ga. 275, 276-77 (4) (695 SE2d 599) (2010) (holding that photographic lineup file, containing forms filled out by eyewitnesses who testified to having identified defendant as the shooter from a pretrial photographic lineup, was not a testimonial account of the witnesses' identification of defendant but was documentary evidence of the murder itself, and thus, admission of file did not violate "continuing witness rule"); *Bryant v. State*, 270 Ga. 266, 270-71 (3) (507 SE2d 451) (1998) (concluding that death certificates that are properly redacted to show only prima facie evidence of the fact that a death occurred and the causes of the death are not subject to the "continuing witness rule"); *Ogburn v. State*, 296 Ga. App. 254, 257 (3) (674 SE2d 101) (2009) (noting "[i]t is well established that the admission of a lab report does not violate the continuing witness rule").

have lacked merit,[63] and "[t]he failure to pursue a futile objection does not amount to ineffective assistance."[64]

For all these reasons, we affirm Rijal's convictions and the denial of his motion for new trial.

*Judgment affirmed. Rickman, C. J., and Pipkin, J., concur.*

---

[63] *See Relaford v. State*, 306 Ga. App. 549, 557 (3) (f) (702 SE2d 776) (2010) (holding defendant could not show counsel rendered ineffective assistance by failing to lodge continuing witness objection to prevent certified copies of past conviction going out with jury as such objection would have lacked merit).

[64] *Ventura v. State*, 284 Ga. 215, 218 (4) (663 SE2d 149) (2008).